in bankruptcy is that state law governs the substance of claims"). Contrary to Appellants' view, the only issue the Supreme Court addressed in Raleigh was the applicability of underlying law giving raise to a claim. Indeed, the Supreme Court expressly left bankruptcy priority principles intact:

> within the limits of the [Bankruptcy] Code, <u>the court may reorder distributions from the bankruptcy estate</u>, in whole or in part, for the sake of treating legitimate claims to the estate equitably.

<u>Id.</u> at 22 (emphasis added). <u>Raleigh</u> provides no support for Appellants' position.

### 4. Under the Undisputed Facts of This Case, the Bankruptcy Court Properly Subordinated Appellants' Stock Redemption Claims

It is undisputed that the claims of Appellants arise from stock redemption promissory notes. <u>See</u> Appellants' Brief at p. 5, ¶ 7 and pp. 6-7, ¶ 16. Every published opinion from or within the First Circuit in the last eighty years that has addressed the priority of stock redemption claims has held that such claims must be subordinated to the claims of general unsecured creditors under principles of equity. The law in the First Circuit is clear: a court is not required to find inequitable conduct on the part of the claimant to subordinate a stock redemption claim under section 510(c).

Appellants attempt to distinguish the instant case from the First Circuit precedent by arguing that the claimants in those cases were controlling shareholders and that in those cases the redeeming corporations received no consideration for the issuance of the notes. <u>See</u> Appellants' Brief at p. 8. More specifically, the purported distinctions Appellants advance are that (a) Appellants were not controlling shareholders of MPC, (b) MPC received consideration "both in fulfilling its statutory duties and in obtaining years

-16-

of loyal service from Appellants," and (c) Appellants' claims arise under ERISA. Id. Once again, Appellants miss the mark.

First, the issue of control is immaterial to the "no fault" inquiry, as the only relevant factor that should be taken into account is the underlying nature of the obligations to be subordinated. See SPM, 163 B.R. at 415. None of the First Circuit decisions discussed above predicated its findings on whether the stock redemption noteholder was in "control" at the time of redemption. In light of Appellants' argument, though, it is also worth noting that they owned a combined fifteen percent (15%) of the outstanding stock of MPC prior to separation – hardly an insignificant percentage for a company owned by its employees (through the ESOP).

Second, Appellants' contention that the consideration they gave for their stock is somehow different than the consideration given by the noteholders in the First Circuit cases fails as well. There simply is no basis for distinguishing the Notes from the redemption notes given to the shareholders in Matthews, SPM, New Era, and Main Street Brewing, supra. In this case as well as in those cases, the redemption added no value to the corporation. The assertion that MPC received some special consideration by fulfilling its statutory duties under ERISA, even if accepted as correct for the sake of argument, also does not change the essential nature of these claims – which manifestly arose out of equity interests. Furthermore, as the Bankruptcy Court observed, Appellants directly contradict themselves by arguing that MPC fulfilled its statutory duties and, on the other hand, arguing non-compliance.

Lastly, Appellants seek to distinguish their claims asserted herein on the basis that they arise under ERISA. However, as Judge Rosenthal noted in the Memorandum of

Decision, a review of Appellants' proofs of claim reveals that the only claims asserted are for non-payment of the Notes. <u>See</u> AA at 7, 15-16. The record is totally devoid of any evidence or verified allegations that would support any basis for recovery by Appellants independent of the mere fact of non-payment of their stock redemption Notes. On this ground alone, the Court should overrule any challenge to the Bankruptcy Court Decision based on alleged ERISA claims.

In any event, to the extent that there is some ERISA nexus to their claims which was supported by the record before the Bankruptcy Court, nothing in ERISA would preempt the equitable subordination provisions of section 510(c). As noted in the Memorandum of Decision, ERISA's express language addresses its relationship to other federal laws:

> Nothing in this subchapter shall be construed to alter, amend, modify invalidate or supersede any law of the United States (except as provided in section 1031 and 1137(c) of this title) or any rule or regulation issued under any such law.

29 U.S.C. §1144(d).

Nowhere in their brief do Appellants challenge Judge Rosenthal's finding that, in view of the preceding provision and the subsequent enactment of the Bankruptcy Code, ERISA cannot "alter, amend, modify, impair or supersede" section 510(c) and its codification of the principle of "no fault" equitable subordination of stock redemption claims.

In conclusion, following the overwhelming weight of binding precedent in this Circuit, the Bankruptcy Court correctly subordinated Appellants' stock redemption claims and ERISA claims, if any, to those of general unsecured creditors under section 510(c)(1) of the Bankruptcy Code.

## B. The Bankruptcy Court Properly Found that Section 510(b) Requires Subordination of Appellants' ERISA-related Claims

To the extent that the Court finds that Appellants have asserted and established on the record claims arising under ERISA that are somehow independent of the obligations to pay sums owing under the stock redemption Notes, those claims must necessarily arise from the purchase or sale of a security of MPC. The only benefits that Appellants were entitled to accumulate and receive under MPC's ERISA-qualified ESOP were in the form of MPC's common stock. At the time of a separation event, Appellants had the right to put the stock to the ESOP or MPC in order to cash out the value of their stock. That is, the only manner in which Appellants could realize the value of their benefits under the ESOP was through their sale, and MPC's purchase, of MPC's stock. In light of these undisputed facts, the Bankruptcy Court properly found that any ERISA-related claims of Appellants would be subject to mandatory subordination under section 510(b).

Section 510(b) of the Bankruptcy Code provides that:

> For purposes of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising form the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. §510(b).

The only argument that Appellants advance against subordination pursuant to section 510(b) is that their alleged claims arising under ERISA are not based on their status as shareholders. See Appellants' Brief at p. 17. However, as set forth above, the only conceivable basis for these alleged ERISA claims (which is totally unsupported on the record before the Court) is the purported breach of MPC's fiduciary duties in

-19-

connection with the purchase or sale of MPC's stock. As such, Judge Rosenthal correctly found that: "it is beyond any reasonable dispute that they are claims for damages arising from the sale of [Appellants'] stock" prior to the issuance of the Notes. See AA at 16.[5]

Based on this inescapable finding, pursuant to the mandatory provisions of section 510(b) of the Bankruptcy Code, the Bankruptcy Court also correctly subordinated any ERISA claims that Appellants might hold based on conduct independent of the issuance of the stock redemption Notes.

### C. The Liens of Appellants Must Be Transferred to the Debtors' Estate Pursuant to 11 U.S.C. §510(c)(2)

The Bankruptcy Court properly ruled, as set forth above, that Appellants' claims must be subordinated to the claims of general unsecured creditors. Section 510(c)(2) expressly provides that a court may order that any lien securing a claim subordinated under section 510(c)(1) be transferred to the estate. Accordingly, if this Court upholds the Bankruptcy Court Decision with respect to subordination under 11 U.S.C. §510(c)(1), it should necessarily uphold the decision to transfer the attachments obtained by Appellants to the Debtors' estate.

---

[5] Furthermore, Appellants cite several cases in support of their argument, but none of those cases involved the assertion of ERISA claims against the debtor. See Appellants' Brief at pp. 15-17. The court in each of these cases ruled as Judge Rosenthal did in finding that claims of stock redemption noteholders arising from a default under those notes cannot be subordinated under section 510(b) of the Bankruptcy Court.[5] See, e.g., In re Montgomery Ward Holding Co., 272 B.R. 836 (Bankr. D. Del. 2001)(stock redemption note); In re Wyeth Co., 134 B.R. 920 (Bankr. W.D. Mo. 1991) (stock redemption note). These citations are irrelevant, though, because, as the Memorandum of Decision makes clear, it is Appellants' alleged ERISA claims that must be subordinated under section 510(b) of the Bankruptcy Code, rather than any claims arising from non-payment of the stock redemption notes, which are subordinated under section 510(c). See AA at 15-17. Appellee notes further that the Appellants' alleged ERISA claims are also subordinated under section 510(c).

-20-

### D. Eggert's Attachment is Avoidable as a Preferential Transfer Pursuant to 11 U.S.C. §547.

Wholly apart from the issue of equitable subordination, Eggert's attachment is manifestly avoidable as a preferential lien pursuant to section 547 of the Bankruptcy Code. Section 547 provides in relevant part:

> (b)  Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> > (1)  to or for the benefit of a creditor;
> > (2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;
> > (3)  made while the debtor was insolvent;
> > (4)  made—
> > > (A) on or within 90 days before the date of the filing of the petition; or
> > > (B) between ninety days and one year before the date of the filing of the petition, if such creditor of such transfer was an insider; and
> >
> > (5)  that enables such creditor to receive more than such creditor would receive if—
> > > (A)  the case were a case under chapter 7 of this title;
> > > (B)  the transfer had not been made; and
> > > (C)  such creditor received payment of such debt to the extent provided by the provisions of this title.

The Eggert Attachment satisfies each of the requirements of section 547(b) as set forth above. Most notably, the Eggert Attachment was obtained only 47 days before the filing of the petitions. Moreover, despite having the opportunity to present evidence or defenses at the confirmation hearing,[6] Eggert raised no substantive defenses to the avoidance of his attachment under section 547.

---

[6]  The confirmation hearing had been scheduled as an evidentiary hearing. However, the parties declined to present any evidence at the hearing and instead rested on their respective summary judgment and plan confirmation arguments. See Transcript at p. 103, ll. 9-24. Eggert declined the opportunity to present evidence or any defenses to the Debtor's avoidance of the Eggert Attachment. Id.

-21-

On appeal, Eggert asserts, for the first time, that the date of his attachment relates back to December 2000 when his note was issued, at which point he allegedly possessed a "statutory, equitable or de facto lien." See Appellants' Brief at 18. This contention Mr. Eggert has created out of whole cloth. There is no basis in law or in fact for the claim that Eggert had any lien prior to obtaining the Eggert Attachment, none was ever offered during the bankruptcy case and no supporting authority is cited in Appellants' brief. Appellee respectfully submits that the appeal of Judge Rosenthal's finding that the Eggert Attachment is avoidable under section 547 is frivolous.

### E. The Bankruptcy Court Properly Exercised its Jurisdiction to Consider the Summary Judgment Motion

Having failed to establish that the Bankruptcy Court Decision should not be upheld on the merits, Appellants complain that the Bankruptcy Court should have refrained from determining the issues and deferred to the District Court. First, the Bankruptcy Court clearly had jurisdiction to address all of the issues it reached in the Bankruptcy Court Decision. The subordination of Appellants' claims under 11 U.S.C. §510 and the avoidance of their attachments on MPC's property are manifestly core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (B), (F), (K) and (O). Furthermore, the separate classification of Appellants' claims under the Plan and the confirmation of the Plan are core matters which required prompt adjudication by the Bankruptcy Court under 28 U.S.C. § 157(b)(2)(L).

Appellants contend that the District Court should have withdrawn the reference and deprived the Bankruptcy Court of its jurisdiction to address these core matters. While the merit, or lack thereof, of the pending motion to withdraw the reference is not

before this Court, it is worth noting that the Appellants never sought a stay pending determination of that motion. As Judge Rosenthal found, such a motion for stay is expressly contemplated by Federal Rule of Bankruptcy Procedure 5001(c), which provides that:

> The filing of a motion for withdrawal of a case or proceeding of for abstention pursuant to 28 U.S.C. § 1334(c) <u>shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. A motion for stay ordinarily shall be presented first to the bankruptcy judge.</u> A motion for stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

Fed. R. Bankr. P. 5001(c) (emphasis added). Appellants at no time requested that the Bankruptcy Court stay consideration of the Summary Judgment Motion or Plan confirmation pending disposition of the withdrawal motion. Accordingly, the Bankruptcy Court continued to have jurisdiction to adjudicate the Summary Judgment Motion.[7]

Moreover, any allegation that the Bankruptcy Court proceeded improperly with respect to the Summary Judgment Motion has effectively been rendered moot by this appeal. Indeed, Appellants acknowledge as much in their brief. See Appellants' Brief at p. 20. It is therefore unclear why Appellants chose to raise this issue, given that the appeal necessarily subjects the Bankruptcy Court's Decision to review by this Court.

---

[7] Were the rule otherwise, it would give rise to dilatory practices by litigants. As the Bankruptcy Court noted, if the mere act of filing a motion to withdraw the reference were sufficient to remove a bankruptcy court's jurisdiction, "it would invite a plethora of delaying tactics by unhappy litigants and would circumvent the need for a movant to satisfy the factors traditionally balanced when a party seeks a stay." See AA at 8-9.

-23-

### F.  Conclusion

The Bankruptcy Court Decision is correct in all respects. First, Appellants' claims arising from the Notes and redemption of their MPC stock and claims arising under ERISA, if any, were properly subordinated under section 510(c) under established principles of equitable subordination in this Circuit. Second, to the extent that Appellants have asserted and presented evidence on the record supporting separate ERISA claims, those claims must be subordinated under the mandatory provisions of section 510(b). Third, Appellants' liens were properly transferred to the estate pursuant to section 510(c)(2) of the Bankruptcy Code. Finally, Eggert's attachment is voidable as a preferential transfer under section 547(b) of the Bankruptcy Code. As a consequence, the Bankruptcy Court Decision should be affirmed in its entirety.

WHEREFORE, Merrimac Paper Company, Inc., the Reorganized Debtor and Appellee herein, respectfully requests that the Bankruptcy Court Decision be affirmed in all respects and that this Court grant such other and further relief as it is just and proper.

Dated: January 16, 2004

Respectfully submitted:

/s/ James F. Wallack

James F. Wallack, Esq. (BBO#557061)
Rafael Klotz, Esq. (BBO# 649456)
Christian Haugsby (BBO# 651191)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA  02110-3333
Tel:  (617) 482-1776
Fax:  (617) 574-4112

Counsel to Appellee

# CERTIFICATE OF SERVICE

I, Christian T. Haugsby, do hereby certify that on the 16th day of January, 2004, I caused to be served the within Brief of Appellee, Merrimac Paper Company, Inc. and the Appendix thereto upon the parties listed below via first-class mail.

Dated: January 16, 2004

*Christian T. Haugsby*
Christian T. Haugsby (BBO# 651191)
Goulston & Storrs, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
Tel:   (617) 482-1776

Thomas P. Smith, Esq.
Caffrey & Smith, P.C.
300 Essex Street
Lawrence, MA 01840

Jeffrey B. Renton, Esq.
Gilbert & Renton LLC
23 Main Street
Andover, MA 01810

Robert Shea, Esq.
Rudolph Friedman LLP
92 State Street
Boston, MA 02109

GSDOCS-1316172-5