**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
CLERKS OFFICE

2004 JAN 15  P 3: 02

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MERRIMAC PAPER COMPANY, INC., | ) | Case No. 03-41477-JBR to |
| *et al.* | ) | 03-41479-JBR |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) |  |
| RALPH HARRISON, | ) |  |
| ALAN EGGERT, | ) |  |
|  | ) |  |
| Appellants, | ) |  |
|  | ) |  |
| v. | ) | Civil Case No. |
|  | ) | 4:03-cv-40288-NMG |
| MERRIMAC PAPER COMPANY, INC. | ) |  |
|  | ) |  |
| Appellee. | ) |  |

## <u>APPENDIX TO BRIEF OF APPELLEE,</u>
## <u>MERRIMAC PAPER COMPANY, INC.</u>

Counsel to Appellee:

James F. Wallack, Esq. (BBO# 557061)
Rafael Klotz, Esq. (BBO# 649456)
Christian T. Haugsby, Esq. (BBO# 651191)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA  02110-3333
Tel:  (617) 482-1776
Fax:  (617) 574-4112

# TABLE OF CONTENTS

I.  Amended Final Judgment Under Fed. R. Bankr. P. 7054(b) on Counts I, III, IV, and VI......1

II.  Memorandum of Decision on Plaintiff's Motion for Partial Summary Judgment [Adversary Proceeding Document #17] and Objection to Confirmation of First Amended Joint Plan of Reorganization, As Modified [Chapter 11 Documents #271, 272, 273 and 288........................2

III.  Affidavit of Brewster Stetson in Support of Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment ..........................................................................................................23

IV.  Second Amended Joint Reorganization Plan of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation, as Modified  .................................................26

V.  Order Confirming Second Amended Joint Reorganization Plan of Merrimac Paper Company, Holyoke Card Company, Inc., and Aquamac Corporation, as Modified....................................75

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 11 |
| MERRIMAC PAPER COMPANY, INC., *et al.* | Case No. 03-41477-JBR to 03-41479-JBR |
| Debtors. | Jointly Administered |
| RALPH HARRISON, ALAN EGGERT, | |
| Appellants, | |
| v. | Civil Case No. 4:03-cv-40288-NMG |
| MERRIMAC PAPER COMPANY, INC. | |
| Appellee. | |

## APPENDIX TO BRIEF OF APPELLEE, MERRIMAC PAPER COMPANY, INC.

Counsel to Appellee:

James F. Wallack, Esq. (BBO# 557061)
Rafael Klotz, Esq. (BBO# 649456)
Christian T. Haugsby, Esq. (BBO# 651191)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
Tel: (617) 482-1776
Fax: (617) 574-4112

# TABLE OF CONTENTS

I. Amended Final Judgment Under Fed. R. Bankr. P. 7054(b) on Counts I, III, IV, and VI......1

II. Memorandum of Decision on Plaintiff's Motion for Partial Summary Judgment [Adversary Proceeding Document #17] and Objection to Confirmation of First Amended Joint Plan of Reorganization, As Modified [Chapter 11 Documents #271, 272, 273 and 288.........................2

III. Affidavit of Brewster Stetson in Support of Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment........................................................................................................23

IV. Second Amended Joint Reorganization Plan of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation, as Modified ..................................................26

V. Order Confirming Second Amended Joint Reorganization Plan of Merrimac Paper Company, Holyoke Card Company, Inc., and Aquamac Corporation, as Modified.....................................75

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| MERRIMAC PAPER COMPANY, INC., | ) | CASE NOS. 03-41477 through |
| *et al.,* | ) | 03-41479 |
| | ) | |
| DEBTORS | ) | Jointly Administered |
| | ) | |
| MERRIMAC PAPER COMPANY, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | ADVERSARY PROCEEDING |
| v. | ) | NO. 03-4181 |
| | ) | |
| RALPH HARRISON | ) | |
| ALAN EGGERT | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**AMENDED FINAL JUDGMENT UNDER FED. R. BANKR. P. 7054(b) ON COUNTS I, III, IV, AND VI**

Judgment is hereby entered for the PLAINTIFF on COUNTS I, III, and IV.

Judgment is hereby entered for the DEFENDANTS as to COUNT VI only with respect to those claims for non-payment of the Stock Redemption Notes.

Judgment is hereby entered for the PLAINTIFF as to Count VI for all other claims within the scope of COUNT VI, including but not limited to any damages caused by alleged ERISA violations in connection with the "put" option.

Dated: November 12, 2003

*Joel B. Rosenthal*

_____
Joel B. Rosenthal
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ) | CHAPTER 11 |
| ) | |
| MERRIMAC PAPER COMPANY, INC., ) | CASE NOS. 03-41477 through |
| *et al.,* ) | 03-41479 |
| ) | |
| DEBTORS ) | Jointly Administered |
| ) | |
| MERRIMAC PAPER COMPANY, INC., ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | ADVERSARY PROCEEDING |
| v. ) | NO. 03-4181 |
| ) | |
| RALPH HARRISON ) | |
| ALAN EGGERT ) | |
| ) | |
| DEFENDANTS. ) | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [ADVERSARY PROCEEDING DOCUMENT #17] AND
OBJECTIONS TO CONFIRMATION OF FIRST AMENDED JOINT PLAN OF
REORGANIZATION, AS MODIFIED
[CHAPTER 11 DOCUMENTS #271, 272, 273, AND 288]**

This matter came before the Court for hearing on the Plaintiff's Motion for Partial

Summary Judgment [#17] on Counts I, III, IV, and VI of its amended complaint against

two of its former employees and their Opposition [#22] to the same. The issue raised in

the Adversary Proceeding, namely whether the notes given by the Plaintiff to the

Defendants who "put" their stock to the Plaintiff pursuant to an ERISA-qualified ESOP,

involves the same issue that gave rise to objections of the Defendants [Chapter 11

Document # 271], and certain other former employees[1] (collectively with the Defendants, the "Former Employees")[Chapter 11 documents # 272, 273, and 288], to confirmation of the First Amended Joint Plan of Reorganization, as modified [#293] (the "Plan"), and thus the Court also heard arguments in support of, and in opposition to, confirmation.[2]  For the reasons set forth herein, the Motion is GRANTED as to COUNTS I, III, and IV; and DENIED as to COUNT VI only with respect to the claims for non-payment of the Stock Redemption Notes; and GRANTED as to Count VI for any claims for damages arising from or related to alleged ERISA violations.  Summary judgment is GRANTED against the Plaintiff as to COUNT VI only with respect to those claims for non-payment of the Stock Redemption Notes.  Subject to the further modifications that the potential dividends of the Former Employees be escrowed or reserved for pending a final order, the Plan will be confirmed.

**BACKGROUND**

The facts in this case are not in dispute.  Merrimac Paper Company, Inc., (the "Plaintiff", "Merrimac", or "Debtor") is a Delaware corporation with its principal place of business in Lawrence, Massachusetts.  On March 17, 2003 (the "Petition Date") the Debtor and its wholly-owned subsidiaries (collectively, the "Debtors") filed voluntary petitions pursuant to Chapter 11 of the United States Bankruptcy Code and continue to

---

[1] The other objectors are William L. Provost, Sharon Ternullo, and Mary K. Logan. Ms Ternullo failed to appear at the confirmation hearing and thus she has waived her objection.

[2] Based upon the Court's statement that it was requiring the proposed confirmation order to be modified to escrow or create a reserve for the objectors' dividends if they were ultimately determined to be entitled to them, Eggert withdraw his objection, which was filed jointly with his Co-defendant, Harrison.

2

operate their businesses as debtors-in-possession.

Since 1985 the Debtor has been the sponsor of an Employee Stock Ownership Plan ("ESOP") which provides that, upon separation from service, a participant is entitled to a distribution of Merrimac stock and within fifteen (15) months of the distribution of said stock, the participant has the right to sell or "put" the stock back to the ESOP or Merrimac. Both Ralph Harrison ("Harrison") and Alan Eggert ("Eggert" and with Harrison, the "Defendants") were vested participants in the ESOP pursuant to which they received Merrimac stock. Upon their terminations, both exercised the put option. Both received unsecured promissory notes from Merrimac in exchange for their stock. Both notes have unpaid balances.

Harrison was employed by Merrimac from 1963 until 1999. At the time of his separation Harrison was a human resource manager and, under the ESOP, owned approximately 6% of Merrimac's common stock. On or about January 1, 2000, Merrimac paid Harrison $200,000 in partial satisfaction of the redemption price of his stock which had been valued at $1,116,200. He also received a note, dated July 19, 2000 in the original principal amount of $916,300, bearing interest at a rate of 8.5% per annum (the "Harrison Note"). The Harrison Note was payable in three equal annual installments and on January 4, 2001 Harrison received the first installment payment of $343,203.00. On or about September 6, 2002, when no further payments on his note were made, Harrison sued Merrimac in state court (the "State Court Action") and on September 12, 2002 the state court granted him a real estate attachment in the amount of $610,000 (the "Harrison Attachment"). The Debtor, although seeking subordination of Harrison's entire claim, whether secured or unsecured, to its general unsecured

3

creditors, does not dispute the perfection of the Harrison Attachment.

Eggert worked for Merrimac from 1975 until 2000.  At the time of his separation he was technical director and executive vice-president and, pursuant to the ESOP, owned approximately 9% of Merrimac's common stock.  Eggert received a promissory note dated December 29, 2000 in the original principal amount of $1,555,500.00, bearing interest at 8.5% per annum (the "Eggert Note" and collectively with the Harrison Note and the notes of the other Former Employees, the "Stock Redemption Notes").  The Eggert Note, like the Harrison Note, was payable in three equal annual installment but Eggert did not receive any payments.

On January 8, 2003 both Defendants filed suit against Merrimac in its corporate capacity and as the ESOP sponsor, along with the ESOP and its plan administrators, in the United States District Court for the District of Massachusetts (03-cv-10048) and seek, among other things, to enforce rights pursuant to the employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C.  §§ 1101 *et seq.*, and payment of the Eggert Note.[3]  Within the 90-day prepetition period, the district court granted Eggert an attachment in the amount of $1,829,935.

On or about June 20, 2003 the Debtor commenced the instant adversary proceeding.  The Defendants moved the district court to withdraw the reference with respect to this Adversary Proceeding.  That motion is currently pending before the

---

[3]The second amended complaint (the "ERISA Complaint") in 03-cv-10048 contains a count against all of the federal court defendants for "unlawful denial of benefits under ERISA", "breach of duties under ERISA", and a breach of contract claim by Eggert against the Debtor.  Harrison had asserted a breach of contract claim in his state court action which he removed to the district court (03-cv-10209).  The district court's docket in that case indicates that Harrison's case was closed on July 31, 2003.

4

district court in case no. 03-cv-10048.

Subsequently the Debtors filed a Joint Plan of Reorganization [Chapter 11 Document #170]. That original plan provided that the Stock Repurchase Claims,[4] which include the claims of the Former Employees, would be extinguished and the holders of such claims would receive no distribution. Subsequently the Debtors filed their First Amended Joint Plan of Reorganization [Chapter 11 Document #229] which changed neither the definition nor treatment of the Stock Repurchase Claims. The Former Employees objected. The Debtors then filed the Plan along with a Motion for Approval of Nonadverse Modifications to the First Joint Amended Plan [Chapter 11 Document #294] (the "Motion to Modify"). In the Motion to Modify the Debtors represent that the Official Committee of Unsecured Creditors will consent to treat the Stock Repurchase Claims as general unsecured claims if the Court determines that the Defendants' claims may not be subordinated. The Plan, however, provides that all money will be distributed to holders of allowed unsecured claims without any provision to reserve the distribution to the Former Employees in the event that this Court were to subordinate their claims only to have such ruling subsequently reversed on appeal, and as noted, the Court ordered that an escrow be established to protect the Former Employees from potentially holding unsecured claims but no fund from which they may be paid.

**THE FORMER EMPLOYEES' PROOFS OF CLAIM**

Each Defendant has filed a proof of claim in the Debtor's bankruptcy. Harrison

---

[4]Stock Repurchase Claims are defined as claims "arising out of or related to the right ... to sell to MPC and/or the ESOP any interest in MPC stock and/or MPC's obligation to purchase such interest, including but not limited to any note issued by MPC and or the ESOP to former employees of MPC in satisfaction of any alleged right to 'put' shares to MPC upon separation from service." Original plan at Article I, B, 1.89.

5

asserts a secured claim of $733,367 and an unsecured claim of $15,000.12.

Harrison's proof of claim, dated July 31, 2003, states that the basis for his claim is

"ERISA benefits" and has attached, among other things, the Harrison Note and a copy

of his complaint filed in State Court Action. The complaint contains only one count,

namely for breach of contract for Merrimac's failure to pay the Harrison Note.

Eggert filed a proof of claim dated April 3, 2003 to which he attaches a copy of

the ERISA Complaint. He asserts a secured claim of $1,555,500.

William L. Provost filed a proof of claim, dated August 8, 2003, asserting an

unsecured claim of $1,077,870 plus interest. He attached an "Explanation of Claim",

which contains no reference to ERISA, and a copy of his Stock Redemption Note.

Mary K. Logan filed a proof of claim dated August 13, 2003. She asserts an

unsecured claim of $790,047.60 plus interest and attorneys' fees. Like Provost, she

attached a copy of her Stock Redemption Note but does not refer to ERISA as a basis

for any portion of her claim.

Sharon Ternullo filed an undated proof of claim asserting an unsecured priority

claim of $179,138.70. She attached, among other things, her Stock Redemption Note

but also did not indicate that she was asserting any rights pursuant to ERISA.

**JURISDICTION**

Neither the Defendants nor any of the other Former Employees challenge the

Court's jurisdiction to rule on plan confirmation, a core proceeding. *See* 28 U.S.C. §

157(b)(2)(L). Rather the Defendants challenge the Court's jurisdiction to determine the

Summary Judgment Motion and cite as the basis for their challenge 28 U.S.C. § 157(d)

which provides in relevant part:

6

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the Unites States regulating organizations or activities affecting interstate commerce .

The Defendants correctly note that ERISA is a federal statute that affects interstate commerce. From this assertion, however, they leap to the incorrect conclusions that the district court is mandated to withdraw the reference and therefore the mere pendency of a withdrawal motion divests this Court of jurisdiction. Whether there are ERISA issues that mandate withdrawal of the reference is an issue not before this Court; that has been entrusted to the district court to determine. The mere pendency of a motion to withdraw, however, does not divest a bankruptcy court of jurisdiction. Fed. R. Bankr. P. 5011(c).[5] If the filing of a motion to withdraw the reference were enough to extinguish a bankruptcy court's jurisdiction, it would invite a plethora of delaying tactics by unhappy litigants and would circumvent the need for a movant to satisfy the factors

---

[5]Rule 5001(c) provides:

> The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. A motion for a stay ordinarily shall be presented first to the bankruptcy judge. A motion for a stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

7

traditionally balanced when a party seeks a stay.[6]  Moreover, in this case, the Court and the parties would face the incongruous position that the Court could not determine the subordination issues in the context of the Adversary Proceeding but could rule on the very same issues in the determining whether to confirm the Plan.[7]  Therefore the Court has jurisdiction to rule on the Summary Judgment Motion and the confirmation of the Plan.

## POSITION OF THE PARTIES

Parties Supporting Equitable Subordination

The Debtors, with the support of the Creditors' Committee and the secured lender, argue that the Stock Redemption Notes must be subordinated pursuant to 11 U.S.C. § 510(b) and/or (c).  They assert that the claims of the Former Employees do not implicate ERISA but are instead contract claims based upon defaults.  They urge this Court to follow decisions by three judges from this district and impose "no-fault" equitable subordination upon any holder of a Stock Redemption Note pursuant to section 510(c).  Those decisions, which they argue represent the prevailing view, were unaffected by the Supreme Court's decisions in *United States v. Noland*, 517 U.S. 535 (1996), and *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000), and to the extent that there is at least one subsequent court decision outside this district that has held to the contrary, *In re Moyer*, 2001 WL 290384 (S.D. Ind.), that court was wrong.

---

[6]The Defendants have not sought a stay pending determination of the withdrawal motion.

[7]Subordination can occur pursuant to a plan.  Fed. R. Bank. P. 7001(8).  None of the Former Employees have sought to have the district court revoke the reference with respect to the Chapter 11 cases.

8

They also assert that subordination of the notes is mandated under section 510(b) because non-payment of a stock redemption note gives rise to a claim for damages within the express language of that section. To the extent that the Former Employees have asserted claims that arise under ERISA, those claims must also be subordinated under section 510(b).

Finally the secured lender argues that Judge Boroff's recent certification of a class in *In re Dehon, Inc.*, 298 B.R. 206 (Bankr. D. Mass. 2003), is his imprimatur that categorical subordination of these kinds of claims continues to be permissible.

Parties Opposing Equitable Subordination

In addition to the Defendants' challenge to this Court's jurisdiction, they and the other Former Employees argue that *Noland* and *Raleigh* prohibit the categorical subordination of claims under section 510(c). Moreover, they argue that, to the extent that the decisions from this district permitting such equitable subordination continue to be good law, each is distinguishable because they do not involve ERISA-qualified plans and, in those cases, the debtors did not receive any "consideration" for the redemption.

Citing authority that holds that note claims do not come within the language of section 510(b), they urge this Court to deny mandatory subordination of the Stock Redemption Notes although at least one claimant, Mary Logan, acknowledged that ERISA-based claims may fall within the literal interpretation of this section. She, however, joins with all the claimants in arguing that the "letter and spirit" of ERISA prohibit subordination of their claims.

9

**DISCUSSION**

*Summary Judgment Standard*

Summary judgment is appropriate when there are no genuine issues of material fact. Fed. R. Civ. P. 56 made applicable to these proceedings by Fed. R. Bankr. P. 7056. The parties agree that there are no genuine issues of material fact that require an evidentiary hearing[8] and therefore summary judgment is appropriate.

*Avoidance of the Eggert Attachment*
*(Count IV)*

The Debtor seeks to avoid the Eggert Attachment pursuant to 11 U.S.C. § 547[9] as it was made within 90 days preceding the Petition Date on account of Eggert's

---

[8]The confirmation hearing had been scheduled as an evidentiary hearing. When offered the opportunity to present evidence, the parties declined and rested on their summary judgment and confirmation objection arguments. All non-parties to the Adversary Proceeding who supported (the secured lender and Creditors' Committee) or opposed (the other former Employees) subordination were permitted to argue during the summary judgment hearing.

[9](b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made--
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if–
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

antecedent debt, evidenced by the Eggert Note.  At oral argument Eggert, although not

conceding his attachment is preferential, raised no substantive defenses and therefore

the Court announced at the summary judgment hearing that the Eggert Attachment

would be avoided.

*The Relationship between ERISA and the Bankruptcy Code*

The Former Employees argue that the "letter and spirit" of ERISA prohibit

subordination of the Stock Redemption Claims and, to the extent any of them have

asserted ERISA-based claims distinct from their Notes, the same "letter and spirit"

prevent subordination of those claims as well.  Unfortunately the Former Employees

provide little guidance to a route to that prized "letter and spirit."  Although citing 26

C.F.R. § 54.4975-7(12)(12)(iv) for the proposition that Merrimac was required to provide

"adequate security"-a term undefined by statute or regulations- for the Stock

Redemption Notes, they do not or cannot articulate how the Former Employees'

acceptance of unsecured promissory notes renders the Bankruptcy Code inapplicable.

Instead they leave the Court to seek its own path guided by principles of statutory

construction and the policies underlying ERISA and the Bankruptcy Code.

As the Supreme Court has stated, ERISA's goal is to protect pension benefits.

*Patterson v. Shumate*, 504 U.S. 753, 764 (1992) (citing 29 U.S.C. §§ 1001(b) and (c)).

It "has described that goal as one of ensuring that 'if a worker has been promised a

defined pension benefit upon retirement–and he has fulfilled whatever conditions are

required to obtain a vested benefit– he actually will receive it.'"  *Id.* at 764-65 (citing

*Nachman Corp. V. Pension Benefit Guaranty Corporation*, 446 U.S. 359, 375 (1980)).

That goal, however noble, cannot thwart ERISA's express language that addresses its

11

relationship to other federal laws. Specifically it provides:

> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(c) of this title) or any rule or regulation issued under any such law.

29 U.S.C. § 1144(d).

Congress subsequently enacted the Bankruptcy Code "as a comprehensive scheme to regulate debtor-creditor relationships after the filing of a bankruptcy petition." *Schlein v. Mills (In re Schlein)*, 8 F.3d 745, 753 (11th Cir. 1993)(Sneed, J., dissenting). At the time of its passage, the Bankruptcy Code contained section 510 as it currently exists. Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 382, n. 66, 102 S.Ct. 1825, 1841, n. 66, 72 L.Ed.2d 182 (1982). It did not pass the Bankruptcy Code in a vacuum.

ERISA cannot "alter, amend, modify, invalidate, impair, or supersede" the Bankruptcy Code. Thus if ERISA's policy can only be advanced by invalidating section 510 of the Bankruptcy Code, no "letter or spirit" can overwrite ERISA's own words.

With these principles in mind, the Court now must determine to what extent, if any, any portion of section 510 impacts the Debtor's obligations to the Former Employees.

### Mandatory Subordination under Section 510(b)
### (Count VI)

Section 510(b) provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the

12

debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

Whether the Former Employees' claims must be subordinated under this section depends upon the type of claim they are asserting.

### (A) Stock Redemption Note Claims

Courts have uniformly held that a claim cannot be subordinated under this section simply because it arises from a stock redemption agreement.

> My conclusion [that section 510(b) does not mandate the subordination of stock redemption claims] is in keeping with the decisions of other courts that have addressed automatic subordination under § 510(b). Not surprisingly, most of these cases involve shareholder claims for rescission or damages based on the fraudulent sale of securities or related fraudulent conduct. E.g., Levine, BRS v. Resolution Trust Corp. (In re Coronet Capital Co.), 1995 WL 429494, *8-9 (S.D.N.Y.1995) (section 510(b) applies to claims by noteholders for rescission of subordinated notes based on debtor's fraud and misrepresentations when issuing notes); In re Granite Partners, L.P., 208 B.R. 332, 334 (Bankr.S.D.N.Y.1997) (concluding that § 510(b) applies to claims based on allegations of post-investment fraud); In re Stern-Slegman- Prins Co., 86 B.R. 994, 999-1000 (Bankr.W.D.Mo.1988) (collecting cases applying § 510(b) to claims related to securities fraud).

> The few courts that have considered statutory subordination in light of a claim based solely on enforcement of a debt instrument have concluded § 510(b) does not apply. See In re Washington Bancorporation, 1996 WL 148533, *20 (section 510(b) does not apply to a claim seeking to recover on commercial paper because the claim seeks only recovery on the debtor's debt obligations rather than on a tort claim in the sale of the paper); In re Wyeth Co., 134 B.R. at 921 (holding that claims based on notes issued by debtor to

13

> redeem stock neither fall under the plain language of §
> 510(b) nor "bear any relationship whatever" to its underlying
> policy concerns); *In re Blondheim Real Estate, Inc.*, 91 B.R.
> at 640, 642 (section 510(b) does not apply to claims based
> on debtor's notes because such claims are for simple
> recovery of an unpaid debt due upon an instrument); *In re
> Stern-Slegman- Prins Co.*, 86 B.R. at 1000 (claim of
> deceased shareholder's estate to enforce sale of stock to
> corporate debtor not subject to mandatory subordination
> because facts surrounding valid stock redemption
> agreement do not fit within purpose or meaning of § 510(b)).

*In re Montgomery Ward Holding Corp.*,  272 B.R. 836, 843 (Bankr. D. Del. 2001).

Although some recent court decisions have arguably expanded the interpretation of the phrase "arising from" by seeking "some nexus or causal relationship between the claim and the sale of the security," *In re Telegroup*, 281 B.R. 133, 138 (3d Cir. 2002), those cases deal with the potential subordination of claims held by *shareholders*.  Such holdings are thus consistent with the policy that a shareholder, who will benefit from an increase in the value of his stock, should not be permitted to escape the risk that comes with stock ownership by attempting to disguise his claim as something else. Shareholders whose claims derive from their status as shareholders will not be permitted to upgrade their claims by such deception.

In the instant case the Former Employees are no longer shareholders.  They have relinquished their stock certificates; they possess no indicia of ownership, and importantly if the stock of the Debtor was to increase in value, they cannot participate in the appreciation.  They are noteholders whose claims arising from the default under their notes are not subject to the mandatory subordination of section 510(b).

### (B) Subordination of ERISA Claims

Only Harrison and Eggert have filed claims that invoke ERISA.  A review of the

14

ERISA Complaint supports that these claims are for damages that arise from their sale of stock to Merrimac. It is beyond any reasonable dispute that they are claims for damages arising from their sale of stock. Thus unless somehow saved from the grasp of section 510(b) by ERISA, those claims must be subordinated. Because the time for filing proofs of claim has passed and any amendments to pending claims would be patently inequitable at this late date, the other Former Employees are barred from asserting any ERISA claims. If they are subsequently deemed to have asserted such claims, those claims, like the ERISA claims of the Defendants, must be subordinated under section 510(b).

There are few decisions that address the relationship between section 510(b) and ERISA. In fact the Court and the parties have only found two, neither of which is directly on point. In *In re Lenco, Inc.*, 116 B.R. 141 (Bankr. E.D. Mo. 1990), the bankruptcy court relied upon section 510(b) and subordinated the Department of Labor's claims that arose out of its assertion that the debtor sold its stock to the ESOP for more than fair market value. (The new owner of Lenco had purchased the stock of the ESOP when he bought the company and then sold the stock back to the ESOP for the same price the next day.) The court determined that the claim fell within the language of section 510(b) and therefore subordination was mandatory.[10] The court

---

[10]Judge Yacos, in dicta in *In re Public Service Co. of New Hampshire*, 129 B.R. 3, 5 (Bankr. D.N.H. 1991), interpreted *Lenco* as a breach of contract case. "Although the claim in this case [PSNH] is largely based on fraud, the language of 510(b) is broad enough to include breach of contract and related actions as well. Indeed, at least one more recent case has applied section 510(b) to a case not involving any allegation of fraud. *See In re Lenco, Inc.*, 116 B.R. 141 (Bankr. E.D.Mo.1990)."

15

concluded that section 510(b) overrode the provisions of ERISA.

The Former Employees are quick to note that *In re Drexel-Burnham Lambert Group*, 138 B.R. 717, 720 (Bankr. S.D.N.Y. 1992), the court stated that *Lenco* was correctly decided on its facts but questioned whether, as a general matter, section 510(b) does trump ERISA. "LBA baldly asserts that § 510(b) overrides provisions of ERISA, which protects employees' benefits plans from employer predations. We are not at all sure that LBA's position on this relatively novel issue is correct." The *Drexel-Burnham* decision arose in the context of a motion to approve a settlement where a trustee's business judgment in compromising a claim is the issue.

In light of ERISA's express language that it is not to be interpreted to supersede another federal law, and the express language of section 510(b) that a claim for "damages arising from ... the sale of such a security," the Court agrees with the *Lenco* court that ERISA does not override the express language of section 510(b) and therefore the ERISA claims must be subordinated.

*Equitable Subordination under Section 510(c)*

Section 510(c) provides:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.

Section 510(c) uses the words "under principles of equitable subordination" so the issue becomes to what "principles" was Congress referring. Although the legislative history cites to *Pepper v. Litton* and *Taylor v. Standard Gas & Elec. Co.*, 306 U.S. 307

16

(1938), both misconduct cases, Congress also stated that "[i]t is intended that the term 'principles of equitable subordination" follow existing case law and leave to the courts development of this principle." One of those principles, at least in this circuit, has been the subordination of stock redemption claims without the need to prove misconduct on the part of the noteholder. *See, e.g. Matthews Bros. v. Pullen*, 268 F. 827 (1st Cir.1920).

The leading case on equitable subordination of stock redemption claims in this district is Judge Queenan's decision in *In re SPM Manufacturing Corp.*, 163 B.R. 411 (Bankr. D. Mass.1994),[11] and indeed, as the Debtors note, "no-fault" equitable subordination has been adopted by other courts as well. *See In the Matter of Environdyne Industries, Inc.*, 79 F.3d 579 (7th Cir. 1996)(subordinating claims of "non-tendering' shareholders without showing of fault); *Burden v. United States (In re Burden)*, 917 F.2d 115, 120-21(3d Cir. 1990)(permitting subordination of tax penalty without a showing of fault if justified by the equities of the case); *In re Dino & Artie's Automatic Transmission Co.*, 68 B.R. 264, 269 (Bankr. S.D.N.Y. 1986)(subordinating stock redemption note claim without a showing of fault).

The SPM court found "more reason" for subordination of stock redemption claims than damage claims arising from stock purchase because while damage claimants only seek to recover the cost of their investment, stock redemption claimants typically seek profit in the sale of stock or recovery of what is essentially a liquidating dividend. *Id.* at 416. Subsequently Judge Boroff adopted the *SPM* reasoning in *In re*

---

[11]Prior to *SPM* the district court affirmed Judge Lavien's equitably subordination of stock redemption note claims. *Liebowitz v. Columbia Packing Company*, 56 B.R. 222 (D.Mass. 1985).

17

*New Era Packaging, Inc.*, 186 B.R. 329, 336 (Bankr. D. Mass. 1995).[12]

After these Massachusetts cases, the Supreme Court, in *United States v. Noland*, 517 U.S. 535 (1996) and *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213 (1996), addressed the question of equitable subordination. Although the *Noland* Court left open the issue of whether a creditor must engage in misconduct before a claim can be equitably subordinated, *Noland*, 517 U.S. at 543, it noted "that (in the absence of a need to reconcile conflicting congressional choices) the circumstances that prompt a court to order equitable subordination must not occur at the level of policy choice at which Congress itself operated in drafting the Code." *Id.* Thus the Former Employees argue that subordination of claims based upon classification fails.

Recently a district court in *Moyer v. Official Creditors Committee of Paint and Assembly Corporation (In re Paint & Assembly Corporation)*, 2001 WL 290384 (S.D. Ind.), vacated a bankruptcy court's decision that stock redemption claims should be equitably subordinated in section 510(c). Explaining that equitably subordinating an entire class of claims conflicts with the Supreme court's decision in *Noland*, the court reviewed the difficulty posed by stock redemption agreements.

> A problem can arise in bankruptcy proceedings if a claimant dresses up a claim she has against the debtor to look like something else of higher priority. *Lifschultz*, 132 F.3d at 343.[13] "Equityholders come last in bankruptcy ... [t]o avoid

---

[12]The Court is aware of Judge Boroff's certification of a class that include stock redemption claimants in *Dehon*. The Court does not interpret certification as the secured lender suggests, namely that it demonstrates Judge Boroff's conclusion that no-fault equitable subordination based upon classification is appropriate after *Noland*.

[13]*In re Lifschultz Fast Freight*, 132 B.R. 339 (7th Cir. 1997).

18

this, an owner might disguise her equity claim as debt. The doctrine of equitable subordination empowers a bankruptcy court to foil this queue- jumping." *Id.* A court may equitably subordinate a claim "in a given case ... when justified by particular facts." *United States v. Noland,* 517 U.S. 535, 540 (1996). However, the subordination of a class of claims does not "fall within the judicial powers of equitable subordination ... [such an action is] a legislative type of decision." *Id.* at 541; *see also United States v. Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. 213, 229 (1996) (holding that "categorical reordering of priorities that takes place at the legislative level of consideration is beyond the scope of judicial authority to order equitable subordination under § 510(c)").

In *In re Montgomery Ward Holding Corp.,* 2000 WL 33712303 (Bankr. D. Del.), the court denied a motion for summary judgment seeking to subordinate stock redemption claims based solely upon the status of the claimants as stock redemption noteholders. The court, however, examined *Noland* and lower court decisions that permitted "no-fault" equitable consideration including *Burden,* and concluded that no-fault equitable subordination continued to exist although the court stated it would not subordinate the claims without weighing the equities of each.

Prior to *Moyer* and the 2000 *Montgomery-Ward* decisions, Judge Queenan *In re Main Street Brewing Co.,* 210 B.R. 662 (Bankr. D. Mass. 1997), discussed *Noland* and its impact on "no-fault" equitable subordination. Noting that the Supreme Court expressly reserved on the question of whether there must be a showing of misconduct before equitable subordination can be invoked, Judge Queenan examined, as he had in *SPM,* the history of equitable subordination in this circuit and concluded that the long-standing rule that, when a company is insolvent, an equity claim remains as equity despite the fact that stock had previously been exchanged for a note, was a "principle of equitable subordination" within the meaning of section 510(c). Thus the prohibition

19

against categorical subordination of claims simply did not apply to stock redemption claims.

This Court agrees that Judge Queenan's analysis is correct. As he noted *Noland* (and *Raleigh* which the Former Employees argue further supports their position) involved a subordination of a tax penalty, assessed in connection with an unpaid postpetition tax, despite the express language of the Bankruptcy Code that such claims enjoy the same priority as the underlying claim.[14] Thus the traditional principle of equitably subordinating stock redemption claims has continued viability after *Noland* and this Court will subordinate the claims arising from Stock Redemption Notes.

Moreover the Former Employees' attempts to distinguish the *SPM* line of cases fails. Their argument that the debtors in the *SPM* line of cases received no consideration for the stock redemption notes ignores that those debtors, just as in the instant case, received their *stock* in exchange for the notes. Moreover their argument that Merrimac received special or somehow better consideration because it was complying with its obligations under the ESOP agreement and ERISA rings hollow when, at the same time, they are suing and complaining about the Debtor's alleged non-compliance.

### Lien Avoidance

Having determined that the Defendant's claims should be subordinated under

---

[14]In *Reorganized CF&I Fabricators*, the Supreme Court stated that in *Noland* "we reversed a judgment said to rely on § 510(c) when the subordination turned on nothing other than the very characteristic that entitled the Government's claim to priority under §§ 507(a)(1) and 503(b)(1)(C)." *Reorganized CF&I Fabricators*, 518 U.S. at 228-29.

20

section 510(c)(1), the Court also determines that Harrison's lien, to the extent it exists,[15]

and Eggert's lien, to the extent it has not been avoided as preferential, shall be

transferred to the Debtor's estate.  11 U.S.C. § 510(c)(2).

**Conclusion**

For the reasons set forth herein, the Motion for Partial Summary Judgment is:

1.  GRANTED as to COUNTS I, III, and IV;

2.  DENIED as to COUNT VI for those claims for non-payment of the Stock

Redemption Notes; and

3.  GRANTED as to COUNT VI for any other claims within the scope of COUNT

VI, including but not limited to any claims for damages caused by alleged ERISA

violations in connection with the exercise of the "put" option.

Judgment shall enter for the Defendants as to COUNT VI for those claims for

non-payment of the Stock Redemption Notes.

For the reasons set forth herein, the Objections to confirmation of the Plan, to

the extent not otherwise resolved, are OVERRULED and the Plan, subject to the

modifications required by the Court at the hearing, will be CONFIRMED.

The Court will enter appropriate scheduling orders with respect to the remaining

Counts (II and V).

Separate orders shall issue.

Dated:  November 7, 2003

Joel B. Rosenthal
United States Bankruptcy Judge

---

[15]The Court makes no determination of whether Harrison continues to hold a valid attachment in light of the procedural posture of the removed State Court Action.

21