**EXHIBIT B**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |
|---|---|
| In re:       ) | |
|       ) | |
| **MERRIMAC PAPER COMPANY, INC.,**    ) | **Chapter 11** |
| *et al.*       ) | **Case No. 03-41477-JBR to** |
|       ) | **03-41479-JBR** |
| **Debtors**       ) | |
|       ) | **Jointly Administered** |
|       ) | |
| **MERRIMAC PAPER COMPANY, INC.,**    ) | |
|       ) | |
| **Plaintiff**       ) | |
|       ) | |
| **V.**       ) | |
|       ) | |
| **RALPH HARRISON,**       ) | |
| **ALAN EGGERT,**       ) | **Adv. Proc. No. 03-04181** |
|       ) | |
| **Defendants**       ) | |
|       ) | |

## AFFIDAVIT OF BREWSTER STETSON IN SUPPORT OF MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Brewster Stetson, hereby attest as follows:

1.     I have been employed by Merrimac Paper Company, Inc. ("MPC") since December of 1991. From December 1991 until December 2001, when I semi-retired, I was the Treasurer and Chief Financial Officer of MPC and its wholly-owned subsidiaries.

2.     Since December of 2001, I have continued to work for MPC. I am currently serving as the Assistant to the Chief Financial Officer.

3.     I am familiar with the books and records of MPC.

4.    MPC established a leveraged employee stock ownership plan and trust on or about January 1, 1985 ("ESOP") for its salaried employees.

5.    Ralph Harrison ("Harrison") and Alan Eggert ("Eggert") were participants in the ESOP.

6.    Harrison separated from service with MPC on January 3, 2000. At the time of separation from service, Harrison maintained a vested interest in 610 shares of MPC stock, representing approximately six percent (6%) of shares outstanding. As of the date of Harrison's separation from service, MPC had 11,043 shares of common stock outstanding, 10,128 of which were owned by the ESOP.

7.    Subsequent to separation from service, Harrison elected to "put" his ESOP vested shares back to MPC, in accordance with Section 10.04 of the ESOP. The ESOP conducted a valuation of Harrison's stock interest in MPC, which value was determined to be $1,116,200 as of December 31, 1999 ($1,830 per share).

8.    On January 1, 2000, Harrison was paid the sum of $200,000 by MPC on account of his stock interest in the ESOP. MPC executed a note dated July 19, 2000 for the balance of Harrison's interest in MPC stock. The note was in the original principal amount of $916,300, plus interest accruing at the rate of eight and one-half percent per annum, and was payable in three annual installments. Harrison accepted delivery of the note, assigned his ESOP stock to MPC, and received partial payment on the note.  On January 4, 2001, MPC paid Harrison the additional sum of $343,203.00 as the first installment on the note. No further payments were made on the note.

9.    Eggert separated from service with MPC on December 31, 2000. At the time of separation from service, Eggert maintained a vested interest in 962 shares of

0024

MPC stock, representing approximately nine percent (9%) of the shares outstanding. Of this amount, 850 shares were owned by Eggert through his participation in the ESOP, with the balance of shares he owned unrelated to the ESOP.

10.      Subsequent to separation from service, Eggert elected to "put" his ESOP vested shares back to MPC, in accordance with Section 10.04 of the ESOP. The ESOP conducted a valuation of Eggert's stock interest in MPC, which value was determined to be $1,555,500 as of December 31, 1999 ($1,830 per share).

11.      MPC executed a note dated December 29, 2000 for the balance of Eggert's interest in MPC stock. The note was in the original principal amount of $1,555,500, plus interest at the rate of eight and one-half percent per annum, and was payable in three annual installments. Eggert accepted delivery of the note and assigned his ESOP stock to MPC. No payments were made on the note.

I declare under penalty of perjury that the foregoing is true and accurate.

Dated:  _October 9, 2003_                        _Brewster Stetson_
                                                 Brewster Stetson

387952

0025

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### WESTERN DIVISION

|  |  |
|---|---|
| In re: ) | |
| ) | |
| ) | |
| MERRIMAC PAPER COMPANY, INC., ) | Chapter 11 |
| Et al. ) | Case No. 03-41477-JBR through |
| ) | Case No. 03-41479-JBR |
| Debtors ) | |
| ) | Jointly Administered |

## SECOND AMENDED JOINT REORGANIZATION PLAN OF MERRIMAC PAPER COMPANY, INC., HOLYOKE CARD COMPANY, INC., AND AQUAMAC CORPORATION, AS MODIFIED

HANIFY & KING, P.C.
Harold B. Murphy, Esq. (BBO#362610)
Andrew G. Lizotte, Esq. (BBO#559609)
One Beacon Street
Boston, MA 02110
(617) 423-0400

Counsel for the Debtors

Dated: Boston, Massachusetts
       November 7, 2003

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

SUMMARY OF THE PLAN ............................................................................................... 1

ARTICLE I  DEFINITIONS, RULES OF INTERPRETATION,
           AND COMPUTATION OF TIME ......................................................... 2
    A.    Scope Of Definitions; Rules Of Construction ....................................... 2
    B.    Definitions ............................................................................................. 3
    C.    Rules Of Interpretation ....................................................................... 13
    D.    Computation Of Time ........................................................................ 13

ARTICLE II  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ...................... 13
    A.    Introduction ......................................................................................... 13
    B.    Unclassified Claims (not entitled to vote on the Joint Plan)................ 14
        1.       Administrative Claims ............................................................ 14
        2.       Professional Fee Claims ........................................................ 14
        3.       Priority Tax Claims ............................................................... 14
    C.    Classified Claims And Equity Interests .............................................. 14

ARTICLE III  TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE
           CLAIMS AND PRIORITY TAX CLAIMS ...................................... 15
    A.    Unclassified Claims ............................................................................ 15
        1.       Administrative Claims ............................................................ 15
        2.       Professional Fee Claims ........................................................ 15
        3.       Priority Tax Claims ............................................................... 15

ARTICLE IV  TREATMENT OF CLAIMS AND EQUITY INTERESTS ............................ 16
    A.    Class 1 - Summit Secured Claim ........................................................ 16
        1.       Impairment and Voting .......................................................... 16
        2.       Treatment .............................................................................. 16
    B.    Class 2 - City of Lawrence Secured Claim ......................................... 17
        1.       Impairment and Voting .......................................................... 17
        2.       Treatment .............................................................................. 17
    C.    Class 3 - City of Springfield Secured Claim ...................................... 18
        1.       Impairment and Voting .......................................................... 18
        2.       Treatment .............................................................................. 18
    D.    Class 4 - Other Secured Claims .......................................................... 18
        1.       Impairment and Voting .......................................................... 18
        2.       Treatment .............................................................................. 18

0027

|   | E. | Class 5 - Other Priority Claims | 19 |
|   |   | 1. Impairment and Voting | 19 |
|   |   | 2. Treatment | 19 |
|   | F. | Class 6 - Nonpriority Unsecured Claims | 19 |
|   |   | 1. Impairment and Voting | 19 |
|   |   | 2. Treatment | 19 |
|   | G. | Class 7 - Stock Repurchase Claims | 21 |
|   |   | 1. Impairment and Voting | 21 |
|   |   | 2. Treatment | 21 |
|   | H. | Class 8 - MPC Equity Interests | 21 |
|   |   | 1. Impairment and Voting | 21 |
|   |   | 2. Treatment | 21 |
|   |   | 3. Cancellation of Common Stock Equity Interests | 21 |
|   |   | 4. ESOP | 21 |
|   | I. | Class 9 - HCC Equity Interests | 22 |
|   |   | 1. Impairment and Voting | 22 |
|   |   | 2. Treatment | 22 |
|   | J. | Class 10 - Aquamac Equity Interests | 22 |
|   |   | 1. Impairment and Voting | 22 |
|   |   | 2. Treatment | 22 |
| ARTICLE V | | MEANS FOR IMPLEMENTATION OF THE JOINT PLAN | 22 |
|   | A. | Substantive Consolidation | 22 |
|   | B. | Corporate Governance Of The Reorganized Debtors | 22 |
|   |   | 1. Certificate of Incorporation and Bylaws | 22 |
|   |   | 2. Control, Operation and Management | 22 |
|   |   | 3. Directors and Officers | 22 |
|   | C. | Cancellation Of Old Equity Securities | 23 |
|   | D. | Issuance Of New Common Stock | 23 |
|   | E. | Use of Available Cash | 23 |
|   | F. | Executive Compensation/Equity Based Compensation Plan | 24 |
|   | G. | Establishment of Profit Sharing Plan | 24 |
|   | H. | Establishment of Class 6 Trust and Distributions to Class 6 Claim Holders | 25 |
|   | I. | Waiver of Certain Class 6 Claims | 26 |
|   | J. | Vesting of Assets Of The Reorganized Debtor | 26 |
|   | K. | Preservation Of Rights Of Action | 26 |
|   | L. | Disposition of Defined Benefit Pension Plan | 26 |
|   | M. | Extinguishment of Avoidance Actions Arising under 11 U.S.C. § 547 | 27 |
|   | N. | Effectuating Documents; Further Transactions | 27 |
|   | O. | Applicability Of Sections 1125 and 1145 Of The Bankruptcy Code | 27 |
|   | P. | Exemption From Certain Transfer Taxes | 27 |
|   | Q. | Final Decree | 28 |

0028

ARTICLE VI  ACCEPTANCE OR REJECTION OF THE JOINT PLAN ............................... 28
   A.    Classes Entitled To Vote.................................................................... 28
   B.    Acceptance By Impaired Classes ....................................................... 28
   C.    Cramdown......................................................................................... 29

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS................................. 29
   A.    Method of Distributions to Holders of Claims .................................. 29
   B.    Compensation and Reimbursement for Services Related to Distributions ........... 29
   C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ........... 30
       1.    Delivery of Distributions .......................................................30
           a.    Generally......................................................................30
       2.    Undeliverable Distributions ...................................................30
           a.    Holding of Undeliverable Distributions.........................30
           b.    Failure to Claim Undeliverable Distributions................30
   D.    Effective Date .................................................................................. 30
   E.    Means of Cash Payments ................................................................. 31
   F.    Timing and Calculation of Amounts to Be Distributed .........................31
       1.    Allowed Claims in Class 6......................................................31
       2.    De Minimis Distributions .......................................................31
       3.    Compliance with Tax Requirements........................................31
   G.    Setoffs ............................................................................................. 31

ARTICLE VIII  TREATMENT OF EXECUTORY CONTRACTS AND
           UNEXPIRED LEASES .......................................................... 32
   A.    Assumption And Rejection Of Executory Contracts And Leases ...................... 32
       1.    Agreements and Leases.......................................................... 32
       2.    Effect of Confirmation Order on Assumptions and Rejections. .............. 32
   B.    Payments Related To Assumption Of Executory Contracts And Leases............. 32
   C.    Bar To Rejection Damages ............................................................... 33
   D.    Compensation And Benefit Joint Plans ............................................. 33

ARTICLE IX  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
           UNLIQUIDATED CLAIMS.................................................... 33
   A.    Prosecution of Objections to Claims.................................................. 33
       1.    Objections to Claims.............................................................. 33
       2.    Authority to Prosecute Objections .......................................... 34
   B.    Treatment of Disputed Claims .......................................................... 34

ARTICLE X  CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS
           OF THE JOINT PLAN ........................................................... 34
   A.    Conditions To Confirmation............................................................. 34
   B.    Conditions To Effectiveness ............................................................. 34
   C.    Waiver Of Conditions ...................................................................... 35

iii

ARTICLE XI  MODIFICATIONS AND AMENDMENTS ....................................................... 35

ARTICLE XII  RETENTION OF JURISDICTION .................................................................. 35

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................................ 37
    A.    Bar Dates For Certain Claims ................................................................ 37
            1.    Professional Fee Claims ........................................................ 37
            2.    Other Claims ......................................................................... 38
    B.    Payment Of Statutory Fees ..................................................................... 38
    C.    Amendment And Severability Of Joint Plan Provisions......................... 38
    D.    Successors And Assigns .......................................................................... 38
    E.    Discharge Of The Debtors And Injunction ............................................. 38
    F.    Releases.................................................................................................... 39
    G.    Limited Indemnity................................................................................... 40
    H.    Termination of Committee....................................................................... 40
    I.    Binding Effect ......................................................................................... 41
    J.    Revocation, Withdrawal Or Non-Occurrence Of Effective Date ........... 41
    K.    Joint Plan Supplement ............................................................................ 41
    L.    Notices .................................................................................................... 41
    M.    Indemnification Obligations ................................................................... 43
    N.    Prepayment.............................................................................................. 43
    O.    Term of Injunctions Or Stays.................................................................. 44
    P.    Governing Law ........................................................................................ 44
    Q.    Post-Effective Date Directors and Officers Liability Coverage............. 44

iv

## INTRODUCTION

Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation (the "Debtors") propose the following Second Amended Joint Plan of Reorganization, as Modified ("Joint Plan") for the resolution of their outstanding creditor claims and equity interests. Reference is made to the joint disclosure statement previously filed, for a discussion of the Debtors' history, businesses, assets, results of operations, projections for future operations, risk factors, and summary and analysis of the Joint Plan.

All holders of claims and equity interests are encouraged to read this Joint Plan and the joint disclosure statement in their entirety before voting to accept or reject this Joint Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the United States Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3019 and those restrictions or modifications set forth in Article XI herein, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Joint Plan prior to its substantial consummation.[1]

## SUMMARY OF THE PLAN

The Joint Plan provides for the disposition of Assets, Claims, and Equity Interests of each of the Debtors. Under the Joint Plan, the Debtors shall be substantively consolidated for distribution purposes only. The Debtors shall otherwise maintain their independent existence post-Effective Date. The Debtors shall continue in operation, with plants located in Lawrence and Springfield, Massachusetts.

Summit, the Debtors' primary secured creditor, shall provide a Revolving Facility on the Effective Date on terms similar to the prepetition working capital lending facility among Summit and the Debtors. Summit shall also be given a Term Note, payable within five (5) years. The aggregate Secured Claim of Summit as of the Effective Date under both the Term Note and the Revolver Note shall be $11,000,000.

On or before the Effective Date, the Debtors shall pay all Allowed Administrative Claims in full, unless otherwise agreed to by the parties and except for ordinary course credit transactions for which payment shall be made when due. Allowed Priority Tax Claims shall be paid in full on the Effective Date.

Unsecured Claims shall receive an initial payment of $425,000, subject to reduction for the expenses of the Class 6 Trustee, upon the Effective Date and an additional payment totaling $125,000, subject to reduction for Class 6 Trustee expenses, within one year of the Effective Date from either the proceeds of the sale of certain real property, or cash payment by the Reorganized Debtors to the extent the real property sale does not generate sufficient proceeds to satisfy such additional payment. In addition, the Unsecured Claim holders shall receive the net proceeds of any recovery resulting from litigation or settlement of the HCC Avoidance Claims.

---

[1] To the extent of any inconsistencies between the joint disclosure statement and this Joint Plan, the terms of the Joint Plan shall govern.

1

0031

The Debtors have estimated total Allowed Unsecured Claims to be approximately $4,500,000, resulting in a distribution to Nonpriority Unsecured Claim holders of approximately twelve percent (12%). The above estimates may vary significantly after the Debtors have had an opportunity to evaluate all Claims asserted.

MPC maintained an ESOP and was majority-owned by employees and former employees. The ESOP provided employees with the right to "put" shares to MPC upon termination from service. Former employees of MPC may assert Claims in the approximate amount of $5,000,000 in connection with the obligation of MPC and/or the ESOP to redeem shares. The Joint Plan provides that such Claims shall be subordinated to Nonpriority Unsecured Claim holders and shall not receive any property or distributions under the Joint Plan; provided, however, that the Unsecured portion of the ESOP Objecting Parties' Claims shall be treated as Class 6 Claim holders in the event that a Final Order is entered sustaining their objections to confirmation as such objections relate to the classification and treatment of Claims of the ESOP Objecting Parties and provided, further, that Messrs. Harrison and Eggert shall be treated as Class 6 Claim holders in the event a Final Order is entered in the Harrison/Eggert Litigation holding that the Claims of Harrison and Eggert may not be subordinated or otherwise avoided and, in such event, Harrison shall also have a Class 4 Claim secured by a Lien upon the Canal Street Property, subject to the further opportunity to challenge such Lien in the Claim resolution process.

The Equity Interests in the Debtors, including any rights arising under the ESOP, shall be extinguished under the Joint Plan. Summit or its designee shall be issued one hundred percent (100%) of the New Common Stock of the Reorganized MPC upon the Effective Date, in consideration for its waiver of any distribution rights relating to its Unsecured Claim of $8,000,000 and its agreement to accept the repayment terms of its Secured Claim as provided in the Joint Plan. Summit's equity rights shall be subject to dilution based upon the terms and conditions of the EBC Plan, which is intended to provide certain equity participation rights to key employees subsequent to the Effective Date.

## ARTICLE I

## DEFINITIONS, RULES OF
## INTERPRETATION, AND COMPUTATION OF TIME

### A.    Scope Of Definitions; Rules Of Construction

For purposes of this Joint Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in the Introduction or Article I of this Joint Plan. Any term used in this Joint Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

2

## B.    Definitions

1.1        "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (i) the actual necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries, or commissions for services rendered after the Petition Date, (ii) Professional Fee Claims, (iii) all fees and charges assessed against the Estates under Chapter 11 of title 28, United States Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Court under Section 546(c)(2)(A) of the Bankruptcy Code.

1.2        "Administrative Claim Bar Date" means November 3, 2003, the date by which requests for Administrative Claims must be filed.

1.3        "Allowed Claim" means a Claim or any portion thereof (i) as to which no objection to allowance or request for estimation has been interposed on or before the date provided for herein or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, Bankruptcy Rules, or the Court, (ii) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (iii) that has been allowed by a Final Order, (iv) as to which the liability of the Debtors, and the amount thereof, are determined by Final Order of a court of competent jurisdiction other than the Court, or (v) that is expressly allowed in a liquidated amount in the Joint Plan.

1.4        "Allowed Administrative Claim" means an Administrative Claim as to which a timely request for payment has been made and which the Debtors (a) have not interposed a timely objection or (b) have interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

1.5        "Allowed" means, when used in reference to a Claim or Equity Interest within a particular Class, an Allowed Claim or Allowed Equity Interest of the type described in such Class.

1.6        "Allowed Class . . . Claim" means an Allowed Claim in the particular Class described.

1.7        "Aquamac" shall mean Aquamac Corporation.

1.8        "Aquamac Equity Interest" means (i) the interest of any holder of equity securities of Aquamac represented by any issued and outstanding shares of Common Stock whether or not transferable and (ii) any option, warrant or right, contractual or otherwise, to acquire or receive any such interest.

3

1.9        "Assets" shall mean all of the right, title, and interest in and to property of whatever type or nature now owned by the Debtors or subsequently acquired by the Debtors, including any property of the Estates for purposes of Section 541 of the Bankruptcy Code (each such item of or interest in property being sometimes referred to herein as an Asset). Assets shall also include any interest the Debtors may have in any retirement, employee benefit, or pension plan, or any Cause of Action.

1.10       "Available Cash" shall mean Cash in the possession, custody, or control of the Debtors as of the Effective Date.

1.11       "Avoidance Actions" shall mean any actions commenced subsequent to the Confirmation Date by the Reorganized Debtors to recover money or property pursuant to the provisions of 11 U.S.C. § § 544-551.

1.12       "Ballot" means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims and Impaired Equity Interests entitled to vote under Article IV hereof in connection with the solicitation of acceptances of the Joint Plan.

1.13       "Ballot Date " means the date set by the Court by which all completed Ballots must be received by the Debtors.

1.14       "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U. S. C. §§ 101-1330, as now in effect or hereafter amended.

1.15       "Bankruptcy Court" means the United States Bankruptcy Court for the District of Massachusetts which has jurisdiction over the Chapter 11 Cases.

1.16       "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, and the Massachusetts Local Bankruptcy Rules, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

1.17       "Bar Date" means August 15, 2003, the date designated by the Court as the last date for filing proofs of Claim against the Debtors.

1.18       "Borrowing Base" shall mean the sum of Eligible Accounts Receivable and Eligible Inventory.

1.19       "Business Day" means a day which is not a day on which banking institutions in Boston, Massachusetts are authorized or obligated by federal or state law or executive order to close.

4

1.20    "Canal Street Property" shall mean the real property owned by MPC, approximately two acres in size, and located at 39 South Canal Street, Lawrence, Massachusetts.

1.21    "Cash" means legal tender of the United States of America or equivalents thereof.

1.22    "Causes of Action" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, which are to be retained by the Reorganized Debtors pursuant to Article V hereof, including but not limited to all claims arising under 11 U.S.C. §§ 544-551.

1.23    "Chapter 11 Cases" mean the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors, case nos. 03-41477 through 03-41479-JBR, currently pending in the Court.

1.24    "Claim" means a claim against the Debtors, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

1.25    "Claims Objection Bar Date" means, for all Claims other than Rejection Claims, ninety (90) days after the Effective Date, and for Rejections Claims, the later of (a) ninety (90) days after the Effective Date; and (b) such other period of limitation as may be specifically fixed by the Joint Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objection to such Claim.

1.26    "Class" means a category of holders of Claims or Equity Interests, as described in Article II hereof.

1.27    "Class 6 Trust" shall mean a trust in a form agreed to by members of the Committee which shall govern the rights and responsibilities of the Class 6 Trustee.

1.28    "Class 6 Trustee" shall mean an individual appointed by the Committee, who shall: (a) liquidate and/or supervise the process of liquidating the Canal Street Property, subject to the terms of this Joint Plan; (b) prosecute, if deemed advisable, the HCC Avoidance Claims; and (c) effect or supervise effecting the distribution of dividends to Class 6 Claim holders in accordance with the provisions of the Plan and the Class 6 Trust.

1.29    "Collateral" means any property or interest in property of the Debtors' subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

5

1.30        "Committee" means the official committee of unsecured creditors, appointed by the United States Trustee pursuant to Section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases, as amended from time to time.

1.31        "Common Stock" means collectively, the common stock of the Debtors, authorized as of the Petition Date and any and all options, rights and warrants to convert into or purchase the foregoing.

1.32        "Confirmation" means entry by the Clerk of the Court of the Confirmation Order.

1.33        "Confirmation Date" means the date of entry of the Confirmation Order by the Clerk of the Court.

1.34        "Confirmation Hearing" means the hearing to consider confirmation of the Joint Plan under Section 1129 of the Bankruptcy Code.

1.35        "Confirmation Order" means the order of the Court confirming the Joint Plan pursuant to Section 1129 of the Bankruptcy Code.

1.36        "Creditor" means any Person who holds a Claim against the Debtors.

1.37        "Cure" means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to Section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties or ordered by the Court, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.38        "Debtors" shall mean Aquamac, HCC, and MPC, collectively.

1.39        "Disbursing Agent" means the Reorganized Debtors or the Class 6 Trustee (as to Class 6 Allowed Claims only), or any party designated by the foregoing, in their sole discretion, to serve as a disbursing agent under the Joint Plan.

1.40        "Disclosure Statement" shall mean the Joint Disclosure Statement relating to Joint Plan of Reorganization of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation as amended, supplemented or modified from time to time, and that is prepared and distributed in accordance with Sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

6

0036

1.41    "Disputed Claim" means:

a.    if no proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed pursuant to an order of the Bankruptcy Court or under applicable law: (i) a Claim that is listed on a Debtors' Schedules as other than disputed, contingent, or unliquidated, but as to which the applicable Debtor, Reorganized Debtor, or, prior to the Confirmation Date, any other party in interest, has filed an objection by the Claims Objection Bar Date and such objection has not been withdrawn or denied by a Final Order, but in the case of a Disputed Claim, only to the extent disputed; and (ii) a Claim that is listed on a Debtors' Schedules as disputed, contingent, or unliquidated, but in the case of a Disputed Claim, only to the extent disputed; or

b.    if a proof of Claim or request for payment of an Administrative Claim has been filed by the Bar Date or Administrative Claim Bar Date or has otherwise been deemed timely filed under applicable law: (i) a Claim for which no corresponding Claim is listed on the Debtors' Schedules; (ii) a Claim for which a corresponding Claim is listed on the Debtors' Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of Claim varies from the nature and amount of such Claim as it is listed on the Schedules; (iii) a Claim for which a corresponding Claim is listed on a Debtors' Schedules as disputed, contingent or unliquidated; or (iv) a Claim for which an objection has been filed by the Reorganized Debtors, or, prior to the Confirmation Date, any other party in interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied by a Final Order.

1.42    "Distribution Reserve" means the reserve, if any, established and maintained by the Disbursing Agent, into which the Disbursing Agent shall deposit the amount of funds that would have been distributed by the Disbursing Agent on the Effective Date to holders of (i) noncontingent liquidated Disputed Claims, upon (a) the allowance of such Claims, or (b) the estimation of such Claims for purposes of allowance and distribution, (ii) contingent liquidated Disputed Claims, if such Claims had been undisputed or noncontingent Claims on the Distribution Date, upon (a) the allowance of such Claims, (b) the estimation of such Claims for purposes of allowance and distribution, or (c) the realization of the contingencies, and (iii) unliquidated Disputed Claims, if such Claims had been liquidated on the Effective Date, such amount to be estimated by the Court or agreed upon by the Disbursing Agent and the holders thereof as sufficient to satisfy such unliquidated Claim upon such Claim's (a) allowance, or (b) estimation for purposes of allowance.  Notwithstanding the foregoing, the Class 6 Trustee shall establish a reserve sufficient to satisfy the Claims of the ESOP Objecting Parties as if all such Claims were allowed as Class 6 Claims, pending entry of a Final Order with respect to the objections by the ESOP Objecting Parties to their classification and treatment under the Joint Plan and entry of a Final Order in the Harrison/Eggert Litigation respecting the subordination or avoidance of the Claims of Harrison and Eggert.

7

1.43    "EBC Plan" means the Equity Based Compensation Plan to be established by the Reorganized Debtors on the Effective Date.

1.44    "EBITDA" shall mean earnings before interest, taxes, depreciation, and amortization.

1.45    "Effective Date" means eleven days following entry of the Confirmation Order, unless an appeal of the Confirmation Order has been filed and a stay pending appeal entered, in which case the Effective Date shall be the date on which the stay is no longer in effect.

1.46    "Eligible Accounts Receivable" shall have the same meaning as provided in the Fourth Amendment and Further Extension of Forbearance Agreement dated January 7, 2003 by and among Summit, the Debtors, Pepperell Paper Company, Inc., and John T. Leahy, trustee of the Merrimac Paper Company, Inc. Leveraged Employee Stock Ownership Plan and Trust.

1.47    "Eligible Inventory" shall have the same meaning as provided in the Fourth Amendment and Further Extension of Forbearance Agreement dated January 7, 2003 by and among Summit, the Debtors, Pepperell Paper Company, Inc., and John T. Leahy, trustee of the Merrimac Paper Company, Inc. Leveraged Employee Stock Ownership Plan and Trust.

1.48    "Equity Interests" shall mean, collectively, the MPC Equity Interest, the HCC Equity Interest, and the Aquamac Equity Interest.

1.49    "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended.

1.50    "ESOP" shall mean the Leveraged Employee Stock Ownership Plan and Trust of Merrimac Paper Company, Inc. dated January 1, 1985, as amended.

1.51    "ESOP Objecting Parties" shall mean Ralph Harrison, Alan R. Eggert, Mary K. Logan, Sharon Ternullo, and William L. Provost, Jr.

1.52    "Estates" means the bankruptcy estates of the Debtors in the Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code.

1.53    "Final Decree" means an order entered by the Court closing the Debtors' cases after satisfaction of all obligations and duties of the Reorganized Debtors under this Joint Plan.

1.54    "Final Order" means an order or judgment, the operation or effect of which has not been stayed or reversed, and as to which order or judgment the time to appeal or seek

8

review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.55        "Fleet" shall mean Fleet National Bank.

1.56        "Harrison/Eggert Litigation" shall refer to adversary proceeding number 03-04181 presently pending before the Bankruptcy Court among MPC, Ralph Harrison, and Alan Eggert.

1.57        "HCC" shall mean Holyoke Card Company, Inc.

1.58        "HCC Avoidance Claims" shall mean any and all causes of action of the Debtors arising from the acquisition by MPC and its wholly-owned subsidiary HCC (formerly known as HCP Acquisition Co.), of the assets of Holyoke Card and Paper Company on or about May 20, 2000. The HCC Avoidance Claims shall specifically except those claims, defenses, or counterclaims that the Debtors, Reorganized Debtors, or the Class 6 Trustee may have against Summit or Fleet in connection with such acquisition.

1.59        "HCC Equity Interest" means (i) the interest of any holder of equity securities of HCC represented by any issued and outstanding shares of Common Stock whether or not transferable and (ii) any option, warrant or right, contractual or otherwise, to acquire or receive any such interest.

1.60        "HCC Pension Plan" shall mean the defined benefit pension plan maintained by HCC for hourly employees.

1.61        "Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code and will not be receiving payment in full of its Claim or Equity Interest pursuant to the Joint Plan.

1.62        "Joint Plan" shall mean this Joint Plan of Reorganization.

1.63        "Lawrence Facility" shall refer to the parcels of real property and real property improvements thereon, but not personalty, owned by MPC and located in Lawrence, Massachusetts.

1.64        "Lawrence Secured Claim" shall mean the Secured Claim of the City of Lawrence, Massachusetts, secured by the Lawrence Facility.

1.65        "Lien" means a lien, security interest, mortgage, deed of trust, or other charge or encumbrance on or in any real or personal property to secure payment of a debt or performance of an obligation.

9

1.66        "M&E" shall mean machinery and equipment.

1.67        "MPC" shall mean Merrimac Paper Company, Inc.

1.68        "MPC Equity Interest" means (i) the interest of any holder of equity securities of MPC represented by any issued and outstanding shares of Common Stock whether or not transferable and (ii) any option, warrant or right, contractual or otherwise, to acquire or receive any such interest.

1.69        "MPC Pension Plan" shall mean the defined benefit pension plan maintained by MPC for its hourly employees.

1.70        "Net Proceeds" shall mean the gross sale proceeds realized from a sale of the Canal Street Property less the usual and customary costs and expenses incurred by the Class 6 Trustee in connection with such sale including, but not limited to, brokerage commissions, stamp taxes, recording costs, and attorneys' fees incurred in the real property sale.

1.71        "New Common Stock" means the shares of common stock of the Reorganized Debtors, authorized under the Reorganized Debtors' certificates of incorporation.

1.72        "New Equity Securities" means, collectively, the New Common Stock and any and all options, rights, and warrants to convert into or purchase the foregoing.

1.73        "Nonpriority Unsecured Claim" means a Claim arising prior to the Petition Date against any of the Debtors that is not a Secured Claim, Priority Tax Claim, Administrative Claim or Other Priority Claim.

1.74        "Old Equity Securities" mean, collectively, the Common Stock and any and all options, rights and warrants to convert into or purchase the foregoing.

1.75        "Other Priority Claim" means a Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than an Administrative Claim, Professional Fee Claim or Priority Tax Claim.

1.76        "Other Secured Claims" means, collectively, all Secured Claims other than the Summit Secured Claim, the Lawrence Secured Claim, and the Springfield Secured Claim.

1.77        "PACE" shall mean the Paper, Allied-Chemical, Energy, and Chemical Workers International Union, AFL-CIO, and any local affiliates.

1.78        "Person" means any individual, corporation, partnership, association, limited liability company, organization, joint stock company, joint venture, estate, trust,

10

governmental unit or any subdivision thereof, official or unofficial committee, and any other entity.

1.79        "Petition Date" means March 17, 2003, the date on which the Debtors filed their petitions for reorganization relief, commencing the Chapter 11 Cases.

1.80        "PPC" means Pepperell Paper Company, Inc.

1.81        "PPC Pension Plan" shall mean the defined benefit pension plan maintained by PPC for its previously employed hourly employees.

1.82        "Pre-petition Loan Documents" shall mean the Credit Agreement between the Debtors and Summit, successor in interest to Fleet, dated February 19, 1998 and ancillary documents, as further amended, modified, and supplemented.

1.83        "Priority Tax Claim" means a Claim that is entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.84        "Professional" means any professional employed in the Chapter 11 Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code.

1.85        "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date.

1.86        "Pro Rata" means, at any time, the proportion that the Allowed amount of a Claim or Equity Interest in a particular Class bears to the aggregate Allowed amount of all Claims or Equity Interests (including Disputed Claims and Equity Interests) in such Class, unless the Joint Plan provides otherwise.

1.87        "Rejection Claims" means Claims arising from the rejection of an executory contract or lease of personal property or real property by the Debtors or the Reorganized Debtors.

1.88        "Reorganized Debtors" means Reorganized MPC, Reorganized HCC, and Reorganized Aquamac.

1.89        "Reorganized Aquamac" means Aquamac on and after the Effective Date.

1.90        "Reorganized HCC" means HCC on and after the Effective Date.

1.91        "Reorganized MPC" means MPC on and after the Effective Date.

11

1.92        "Revolver Note" shall mean the promissory note issued by the Reorganized Debtors to Summit upon the Effective Date in connection with the Revolving Facility.

1.93        "Revolving Facility" means the post-Confirmation working capital credit facility that will be entered into by the Reorganized Debtors and Summit on the Effective Date.

1.94        "Schedules" means the schedules of assets and liabilities and the statements of financial affairs, filed with the Court by the Debtors, as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.95        "Secured Claim" means a Claim that is secured by a Lien upon Assets, or the proceeds of the sale of such Assets, in which the Debtors have an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Court, of such Lien as determined by a Final Order of the Bankruptcy Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors or the Reorganized Debtor and the holder of such Claim.

1.96        "Setoff Claim" means a Claim against the Debtors by a Creditor that has a valid right of setoff with respect to such Claim, which right is enforceable under Section 553 of the Bankruptcy Code as determined by a Final Order or as otherwise agreed to in writing by the Debtors, to the extent of the amount subject to such right of setoff.

1.97        "Springfield Facility" shall mean the real property and real property improvements thereon, but not personalty, owned by HCC and located at 95 Fisk Avenue, Springfield, Massachusetts.

1.98        "Springfield Secured Claim" shall mean the Secured Claim of the City of Springfield, Massachusetts secured by the Springfield Facility.

1.99        "Stock Repurchase Claim" shall mean any Claim arising out of or related to the right of a party to sell to MPC and/or the ESOP any interest in MPC stock and/or MPC's obligation to purchase such interest, including but not limited to any note issued by MPC and/or the ESOP to former employees of MPC in satisfaction of any alleged right to "put" shares to MPC upon separation from service.

1.100       "Summit" shall mean Summitbridge Global Investments, LLC and its assigns.

1.101       "Term Note" shall mean the promissory note to be executed by the Reorganized Debtors to Summit upon the Effective Date.

1.102       "Unimpaired Claim" means a Claim that is not an Impaired Claim.

12

1.103    "Unsecured Deficiency Claim" means any portion of a Secured Claim to the extent that the value of the Collateral securing the Secured Claim is less than the amount of such Secured Claim, or to the extent that the amount of any such Secured Claim subject to a setoff is less than the amount of such Secured Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**C.       Rules Of Interpretation**

For purposes of the Joint Plan (i) any reference in the Joint Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (ii) any reference in the Joint Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented, (iii) unless otherwise specified, all references in the Joint Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Joint Plan, (iv) the words "herein" and "hereto" refer to the Joint Plan in its entirety rather than to a particular portion of the Joint Plan, (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Joint Plan, and (vi) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**D.       Computation Of Time**

In computing any period of time prescribed or allowed by the Joint Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**A.       Introduction**

All Claims and Equity Interests, except Administrative Claims, Professional Fee Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions

13