pursuant to the Joint Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**B.      Unclassified Claims (not entitled to vote on the Joint Plan)**

      1.      Administrative Claims

      2.      Professional Fee Claims

      3.      Priority Tax Claims

**C.      Classified Claims And Equity Interests**

Claims and Equity Interests, other than Administrative Claims, Professional Fee Claims and Priority Tax Claims, are classified for all purposes, including, where applicable, voting, confirmation and distribution pursuant to the Joint Plan as follows:

      1.      Class 1 – *Summit Secured Claim*

      2.      Class 2 – *Lawrence Secured Claim*

      3.      Class 3 – *Springfield Secured Claim*

      4.      Class 4- *Other Secured Claims*

      5.      Class 5- *Other Priority Claims*

      6.      Class 6 – *Nonpriority Unsecured Claims*

      7.      Class 7 – *Stock Repurchase Claims*

      8.      Class 8 - *MPC Equity Interests*

      9.      Class 9 – *HCC Equity Interests*

     10.      Class 10 – *Aquamac Equity Interests*

0044

# ARTICLE III

## TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

**A.    Unclassified Claims**

1.    <u>Administrative Claims.</u>  Except as otherwise provided for herein, each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtors and such holder shall have agreed upon in writing; *provided, however,* that Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.  On or before the Effective Date, the Debtors or the Reorganized Debtor shall pay or have paid in Cash in full all Allowed Administrative Claims for fees payable pursuant to 28 U.S.C. §1930 and fees payable to the Bankruptcy Court, which are due and payable on or before the Effective Date.  All fees payable pursuant to 28 U.S.C. §1930 after the Effective Date shall be paid by the Reorganized Debtors.

2.    <u>Professional Fee Claims.</u>  All Persons that are awarded compensation or reimbursement of expenses by the Court in accordance with Section 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to Section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Court (a) on or as soon as reasonably practicable following the earlier to occur of (i) the Effective Date and (ii) the date in which such Claim is Allowed, or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtors.

3.    <u>Priority Tax Claims.</u>  Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, cash on the Effective Date equal to the unpaid portion of such Allowed Priority Tax Claim.   All payments made on account of Priority Tax Claims shall be applied first to the "trust fund" portion of any such obligation. .

0045

# ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.    Class 1 - Summit Secured Claim**

1.    <u>Impairment and Voting</u>.  Class 1 is impaired under the Joint Plan.  The holder of the Claim in Class 1 is entitled to vote to accept or reject the Joint Plan.

2.    <u>Treatment</u>.  The Class 1 Claim shall be Allowed in the aggregate amount of $11,000,000.  Such Allowed Class 1 Claim shall be satisfied in full by the Reorganized Debtors as follows:

a)    <u>Revolver Note:</u>  Upon the Effective Date, the Reorganized Debtors shall execute and deliver to Summit the Revolver Note containing the following terms:

(i)    <u>Amount:</u>  Equal to eighty-five percent (85%) of Eligible Accounts Receivable and sixty-five percent (65%) of Eligible Inventory as of the Effective Date;

(ii)    <u>Interest Rate:</u>  The fixed rate of six percent (6%) per annum commencing to accrue on the Effective Date;

(iii)    <u>Security:</u>  To secure repayment of the Revolver Note, Summit shall retain its Liens existing as of the Petition Date or arising during the Chapter 11 Cases.  In addition, Summit shall be granted a Lien upon all other Assets of the Debtors, junior in priority to the Liens retained by Claim holders in Classes 2, 3, and 4.

(iv)    <u>Loan Documentation:</u>  Subject to applicable loan documentation on substantially similar terms and conditions as the Pre-Petition Loan Documents.

(v)    <u>Maturity:</u>  One year, renewable at the agreement of the parties.

b)    <u>Term Note:</u>  Upon the Effective Date, the Reorganized Debtors shall execute and deliver to Summit the Term Note, containing the following terms:

(i)    <u>Amount:</u>  The difference between $11,000,000 and the Amount of the Revolver Note;

16

(ii)    Interest Rate:  The fixed rate of six percent (6%) per annum commencing to accrue on the Effective Date;

(iii)   Security:  To secure repayment of the Term Note, Summit shall retain its Liens existing as of the Petition Date or arising during the Chapter 11 Cases.  In addition, Summit shall be granted a Lien upon all other Assets of the Debtors, junior in priority to the Liens retained by Claim holders in Classes 2, 3, and 4.

(iv)    Payments:  equal monthly installments of principal and interest calculated and based upon an amortization period of eight (8) years, with payments to commence thirty (30) days after the Effective Date;

(v)     Maturity Date:  entire unpaid balance shall be due and payable on the fifth anniversary of the Effective Date.

(vi)    Loan Documentation:  Subject to applicable loan documentation on substantially similar terms and conditions as the Pre-Petition Loan Documents.

**B.    Class 2 – City of Lawrence Secured Claim**

1.    Impairment and Voting.  Class 2 is impaired by the Joint Plan.  The holder of the Claim in Class 2 is entitled to vote to accept or reject the Joint Plan.

2.    Treatment.  The Class 2 Claim shall be Allowed in an amount agreed to by the parties or, in the absence of agreement, as determined by the Court.   Repayment of the Allowed Class 2 Claim by Reorganized MPC shall be pursuant to the following provisions, unless otherwise agreed to by the parties or ordered by the Court:

(i)     Interest Rate:  fixed rate of five percent (5%) per annum commencing to accrue upon the Effective Date;

(ii)    Payments:  equal monthly installments of principal and interest, with payments calculated and based upon a twenty (20) year amortization and with the initial payment to be made thirty (30) days after the Effective Date;

(iii)   Maturity Date:   entire unpaid balance of the Class 2 Claim shall be due and payable on the fifth anniversary of the Effective Date;

(iv)    Security:  Retention of Liens upon the Lawrence Facility.

17

Notwithstanding the foregoing, at any time on or after the Effective Date, the Reorganized Debtors may pay the real property or other municipal taxes outstanding as to any parcel contained within the Lawrence Facility, and in such event the Class 2 Secured Claim shall no longer be secured by such parcel.   To the extent Reorganized MPC elects to abandon [as identified in the plan supplement to be filed no later than nine (9) days prior to Confirmation] any parcel comprising a portion of the Lawrence Facility, the amount of the total Class 2 Secured Claim shall be reduced by the portion of the Class 2 Claim attributable to the abandoned parcel.

## C.     Class 3 – City of Springfield Secured Claim

1.     <u>Impairment and Voting</u>.  Class 3 is impaired by the Joint Plan.  The holder of the Claim in Class 3 is entitled to vote to accept or reject the Joint Plan.

2.     <u>Treatment</u>.  The Class 3 Claim shall be Allowed in an amount agreed to by the parties or, in the absence of agreement, as determined by the Court.    Repayment of the Allowed Class 3 Claim by Reorganized HCC shall be pursuant to the following provisions, unless otherwise agreed to by the parties or ordered by the Court:

    (i)     <u>Interest Rate</u>:  fixed rate of five percent (5%) per annum commencing to accrue upon the Effective Date;

    (ii)     <u>Payments</u>:  equal monthly installments of principal and interest, with payments calculated and based upon a twenty (20) year amortization and with the initial payment to be made thirty (30) days after the Effective Date;

    (iii)     <u>Maturity Date</u>:   entire unpaid balance of the Class 2 Claim shall be due and payable on the fifth anniversary of the Effective Date.

    (iv)     <u>Security</u>:   Retention of Liens upon the Springfield Facility.

## D.     Class 4- Other Secured Claims

1.     <u>Impairment and Voting</u>.  Class 4 may be unimpaired by the Joint Plan.  The holders of Claims in Class 4 may be entitled to vote to accept or reject the Joint Plan.

2.     <u>Treatment</u>.  Prior to or upon the Effective Date at the option of the Debtors and Summit, such Allowed Other Secured Claims shall receive one of the following:

(i)     Cash, in an amount not to exceed the Allowed amount of such Claim, equal to the proceeds actually realized from the sale of any Collateral securing such Claim, less the actual costs and expenses of disposing of such Collateral;

18

(ii)    continued monthly payments in accordance with existing contracts or agreements until the Claim has been satisfied, or upon such other terms as ordered by the Bankruptcy Court;

(iii)    abandonment of the Collateral securing the Class 4 Claim in satisfaction of such Claim;

(iv)    such other treatment as may be agreed upon by the Debtors, Summit, and the holder of the Allowed Other Secured Claim.

In the event that the Reorganized Debtors sell Collateral securing such Allowed Other Secured Claim or abandons such Collateral, all expenses relating thereto, including but not limited to transportation, shipping, decommissioning and storage expenses, shall be charged against such Allowed Other Secured Claim.   In the event the Reorganized Debtors retain the Collateral, the Secured Claim holder shall retain its Lien upon the Collateral until such Claim has been satisfied.   In the event of entry of a Final Order in favor of Harrison in the Harrison/Eggert Litigation respecting subordination or avoidance of Harrison's Claim and upon final allowance of said Claim as a Secured Claim after notice and opportunity to object, Harrison shall have an Allowed Class 4 Claim (to the extent of the value of the Canal Street Property) secured by a Lien upon the Canal Street Property or the proceeds thereof if the Canal Street Property has been previously sold by the Reorganized MPC or the Class 6 Trustee, and the Reorganized Debtors and the Class 6 Trustee shall in such event abandon any interest in the Canal Street Property.

**E.    Class 5- Other Priority Claim**

1.    <u>Impairment and Voting</u>. Class 5 is unimpaired by the Joint Plan.  Each holder of an Allowed Class 5 Claim is deemed to have accepted the Joint Plan.

2.    <u>Treatment</u>.  Upon  the Effective Date, Allowed Class 5 Claim holders shall be paid by each respective Reorganized Debtor the full amount of such claim, or shall be paid such other amounts as may be agreed to by the Debtors and the Claim holder.

**F.    Class 6 - Nonpriority Unsecured Claims**

1.    <u>Impairment and Voting</u>.  Class 6 is impaired by the Joint Plan.  Each holder of an Allowed Nonpriority Unsecured Claim in Class 6 is entitled to vote to accept or reject the Joint Plan.

2.    <u>Treatment</u>.  Each holder of an Allowed Claim in Class 6 will be paid by or at the direction of the Class 6 Trustee, in full satisfaction of such Allowed Claim, its Pro Rata share, based on the principal amount of each holder's Allowed Claim, of the following amounts, which shall be subject to reduction to pay the fees and expenses of the Class 6 Trustee:

(i)    $425,000 in cash which shall be paid by the Class 6 Trustee on the Effective Date or as soon thereafter as is practicable;

19

(ii)     Upon the Effective Date or such later date as the Reorganized MPC and the Class 6 Trustee shall agree in writing, the Reorganized MPC shall convey to the Class 6 Trustee the Canal Street Property, free and clear of all Liens, claims and encumbrances (other than the attachments obtained by Harrison and Eggert to the extent that they have not been avoided in the Harrison/Eggert Litigation).  The Class 6 Trustee shall use his or her best efforts to market and sell the Canal Street Property and distribute the net proceeds, *Pro Rata*, to the holders of Allowed Class 6 Claims.  If, on or before the first anniversary of the Effective Date, (i) the Class 6 Trustee has not sold the Canal Street Property for an amount sufficient to generate Net Proceeds equal to or greater than $125,000 or (ii) the Debtor has not secured a favorable judgment in the Harrison/Eggert Litigation subordinating the claims and avoiding the Liens of Ralph Harrison and Alan Eggert and preserving such Liens for the benefit of Class 6 creditors (so as to permit a sale of the Canal Street Property by the Class 6 Trustee), then the Reorganized Debtors shall pay to the Class 6 Trustee the difference between the Net Proceeds actually generated from any sale of the Canal Street Property and $125,000; provided, however, that if the Reorganized Debtors are obligated to pay the Class 6 Trustee $125,000 because the Canal Street Property has not been sold, then upon receipt of such payment from the Reorganized Debtors, the Class 6 Trustee shall be obligated to convey the Canal Street Property to the Reorganized Debtors or their nominee.  In the event that the Canal Street Property is to be sold prior to entry of a Final Order respecting the validity of Harrison's Lien thereon, the Reorganized MPC or the Class 6 Trustee, as the case may be, shall provide ten (10) days' written notice to Harrison respecting the proposed terms of such sale and, in the event Harrison objects to the sale, no such sale shall take place until the dispute is resolved by the Bankruptcy Court.  In the event of no objection, the Reorganized MPC or Class 6 Trustee shall consummate the sale and escrow the net proceeds pending entry of a Final Order respecting the validity of Harrison's Lien upon the Canal Street Property.  The escrowed proceeds shall be held in a separate interest-bearing account by the Class 6 Trustee.

(iii)     Upon the Effective Date, the Reorganized Debtors shall be deemed to have transferred and assigned to the Class 6 Trustee, free and clear of all Liens, claims, encumbrances and other property interests, the HCC Avoidance Claims.  To the extent that the Class 6 Trustee obtains any recoveries from the HCC Avoidance Claims, he or she shall hold Summit harmless from and against any indemnification or contribution claims for recovery of judgments against or settlements paid by any defendants to the HCC Avoidance Claims which are brought against Summit (but shall have no obligation to pay Summit's attorneys' fees in defense of such claims).  In the event any such claims for indemnification or contribution are made or threatened against Summit, Summit shall: (x) promptly notify the Class 6 Trustee,  and (y) use best efforts to defend such claims.  The Class 6 Trustee shall not be liable for any settlement of any such claim by Summit without the Class 6 Trustee's consent which shall not be unreasonably withheld. Nothing in the foregoing shall confer the right upon any party to seek contribution or indemnity contrary to the provisions of M.G.L. ch. 231B § 1 et. seq. or other applicable laws.;

20

Summit shall have an Allowed Unsecured Claim in the amount of $8,000,000. Notwithstanding such allowance, Summit shall waive any right to participate in the distributions to be made to Class 6 Claims under this Joint Plan and shall obtain all of the New Common Stock of the Reorganized MPC, subject to dilution based upon the terms and conditions of the EBC Plan.

**G.    Class 7- Stock Repurchase Claims**

1.    <u>Impairment and Voting</u>.  Class 7 is impaired by the Joint Plan.  Each Stock Repurchase Claim in Class 7 is deemed to have rejected the Joint Plan.

2.    <u>Treatment</u>.  Stock Repurchase Claims shall be extinguished under the Joint Plan; Class 7 Claim holders shall have no further Claims or rights against the Reorganized Debtors, the Assets, or the Estates. provided, however, that the ESOP Objecting Parties shall be treated as Class 6 Claim holders in the event that a Final Order is entered sustaining objections to confirmation as such objections relate to the classification and treatment of Claims of the ESOP Objecting Parties and provided, further, that Messrs. Harrison and Eggert shall be treated as Class 6 Claim holders in the event a Final Order is entered in the Harrison/Eggert Litigation holding that the Claims of Harrison and Eggert may not be subordinated or otherwise avoided. In the event that a Final Order is entered subordinating a portion of the Claims held by the ESOP Objecting Parties, then such portion of such Claims which are not subordinated shall be treated as Class 6 Claims.

**H.    Class 8 – MPC Equity Interests**

1.    <u>Impairment and Voting</u>.  Class 8 is impaired by the Joint Plan.  The holders of MPC Equity Interests are deemed to reject the Joint Plan, and accordingly, are not entitled to vote to accept or reject the Joint Plan.

2.    <u>Treatment</u>.  The holders of MPC Equity Interests shall not receive or retain any interest, Liens, property, or Claims under the Joint Plan.

3.    <u>Cancellation of Common Stock Equity Interests</u>.  On the Effective Date, all Common Stock relating to MPC Equity Interests shall be extinguished and the certificates and all other documents representing such Common Stock shall be deemed cancelled and of no force or effect.

4.    <u>ESOP.</u>  The ESOP shall be terminated under applicable nonbankruptcy law.    As of the Effective Date, the ESOP and any of its participants shall have no further Claims or rights against the Reorganized Debtors, the Assets, or the Estates.

21

I.    **Class 9 – HCC Equity Interests**

    1.    <u>Impairment and Voting</u>.  Class 9 is impaired by the Joint Plan.  MPC, the sole holder of HCC Equity Interests and co-proponent of the Joint Plan, is deemed to accept the Joint Plan, and accordingly, is not entitled to vote to accept or reject the Joint Plan.

    2.    <u>Treatment</u>.  The Common Stock of HCC shall be extinguished under the Joint Plan.  Class 9 interest holders shall have no further Claims or rights against the Reorganized Debtors, the Assets, or the Estates.

J.    **Class 10 – Aquamac Equity Interests**

    1.    <u>Impairment and Voting</u>.  Class 10 is impaired by the Joint Plan.  MPC, the sole holder of Aquamac Equity Interests and co-proponent under the Joint Plan, is deemed to accept the Joint Plan and accordingly is not entitled to vote to accept or reject the Joint Plan.

    2.    <u>Treatment</u>.  The Common Stock of Aquamac shall be extinguished under the Joint Plan.  Class 10 interest holders shall have no further Claims or rights against the Reorganized Debtors, the Assets, or the Estates.

**ARTICLE V**

**<u>MEANS FOR IMPLEMENTATION OF THE JOINT PLAN</u>**

A.    **Substantive Consolidation**

    The Joint Plan shall effect the substantive consolidation of the Debtors for distribution purposes only.  For distribution purposes only, all Assets and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the Assets and liabilities of the remaining Debtors.  No distributions shall be made on account of inter-company Claims among the Debtors.

B.    **Corporate Governance Of The Reorganized Debtors.**

    1.    <u>Certificate of Incorporation and Bylaws</u>.  The certificates of incorporation and by-laws of the Reorganized Debtors shall be modified in order to satisfy the requirements of the Joint Plan and the Bankruptcy Code and shall include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities.

22

2.    Control, Operation and Management.  On the Effective Date, the management, control and operation of the Reorganized Debtors shall become the responsibility of the Board of Directors of the Reorganized Debtors.

3.    Directors and Officers.  On the Effective Date, the term of the current Board of Directors of the Debtors shall expire.   The successor Board of Directors shall be comprised of Donald Plummer and two other members appointed by Summit.  Biographies of the post-confirmation Board of Directors shall be appended to the plan supplement.

**C.    Cancellation Of Old Equity Securities**

On the Effective Date, except as otherwise provided for herein, (i) the Old Equity Securities, to the extent not already cancelled, shall be automatically cancelled without any further action by the Reorganized Debtors, and (ii) the obligations of the Debtors under the Old Equity Securities and under the Certificate of Incorporation, any agreements, indentures, or certificates of designations governing the Old Equity Securities or the rights of holders thereof, including the provisions of the ESOP, shall be deemed discharged and extinguished.

**D.    Issuance Of New Common Stock**

Upon the Effective Date, the Reorganized MPC shall issue one hundred percent (100%) of the New Common Stock to Summit, subject to dilution based upon the terms and conditions of the EBC Plan, as described in Article V, section E.  The Reorganized MPC shall be issued one hundred percent (100%) of the New Common Stock of Reorganized HCC and Reorganized Aquamac.

The issuance by the Reorganized Debtors of all of the shares of the New Common Stock that are required to be distributed pursuant to this Joint Plan is hereby authorized without further act or action by the Board of Directors of the Reorganized Debtors and without further act or action under applicable law, regulation, order, or rule.  The shares of New Common Stock to be issued under this Joint Plan shall be deemed issued as of the Effective Date regardless of the date on which they are actually distributed and upon such issuance shall be fully paid and non-assessable.

**E.    Use of Available Cash**

On the Effective Date, the Reorganized Debtors shall have use of the Available Cash for all purposes including: (a) payment of Professional Fee Claims and other Joint Plan-related expenses; and (b) use as working capital in connection with continued operations.

23

**F.     Executive Compensation/Equity Based Compensation Plan**

Executive Compensation

      (a) Upon the Effective Date, the Reorganized Debtors shall enter into employment
contracts with Donald Plummer and Daniel Mirski, designating such individuals as
chief executive officer and chief financial officer, respectively.

      The employment contracts, a copy of which shall be included within the plan supplement,
shall provide for other customary and standard provisions contained within an employment
contract for key employees, including the provision of severance pay in the event certain
conditions are satisfied.   Other key employees may receive employment contracts as agreed upon
by Summit and the Reorganized Debtors.

      Upon the Effective Date and annually thereafter, the Reorganized Debtors shall establish
a bonus plan whereby key employees may earn a bonus of up to fifty percent (50%) of then-
current compensation upon the attainment of personal and company goals.

Equity-Based Compensation Plan

      In addition, certain key employees of the Reorganized Debtors, including but not limited
to Donald Plummer and Daniel Mirski, shall be granted equity-based interests in the Reorganized
Debtors all on terms and conditions of the EBC Plan to be submitted with the plan supplement.
The EBC Plan provides for participating employees to receive equity based stock units, or the
equivalent of an equity ownership in the Reorganized Debtors, provided that such stock units
shall not entitle the participants to any dividend, voting, or other rights of an actual owner of an
equity interest in the Reorganized Debtors other than as provided in the EBC Plan.

**G.     Establishment of Profit Sharing Plan**

      Upon the Effective Date, the Reorganized Debtors shall establish a profit sharing plan for
active salaried employees, with participation levels to be determined by the Board of Directors of
the Reorganized Debtors, and with contributions to the plan to be made in accordance with the
following formula:

      (i)     no annual contribution if EBITDA is less than $2,500,000;

      (ii)    contributions equal to twenty percent (20%) of EBITDA in excess
            of $2,500,000, up to a maximum of $100,000;

      (iii)   contributions equal to twenty five percent (25%) of EBITDA in
            excess of $3,000,000, up to a maximum additional contribution of
            $125,000;

24

     (iv)    contributions equal to thirty five percent (35%) of EBITDA in excess of $3,500,000, up to a maximum additional contribution of $175,000;

     (v)    contributions at the reasonable discretion of the Reorganized Debtor's board of directors for EBITDA in excess of $4,000,000.

Participants shall vest over five (5) years, commencing upon the Effective Date, at the rate of twenty percent (20%) per annum.

## H.    Establishment of Class 6 Trust and Distributions to Class 6 Claim Holders.

Upon the Effective Date, the Class 6 Trust shall be established for the benefit of Class 6 Claim holders.  Each holder of an Allowed Class 6 Claim shall have a beneficial interest in the Class 6 Trust and shall share *pro rata* in the distributions to Allowed Class 6 Claim holders, subject to reduction for the fees and expenses of the Class 6 Trustee. The Committee shall appoint the Class 6 Trustee who, notwithstanding any contrary provisions of this Joint Plan, shall have the following rights and responsibilities:

    (a)    the co-exclusive right, with the Reorganized Debtors, to object to Class 6 Claims, including the right to assert Avoidance Actions in defense of any Class 6 Claim; and

    (b)    the exclusive right, pursuant to 11 U.S.C. §1123(b)(3)(B), to prosecute, compromise, and deal with in any way the HCC Avoidance Claims.

The Class 6 Trust shall bear all of its administrative costs and attorneys' fees.

Upon the Effective Date, the Reorganized Debtors shall transfer to the Class 6 Trust the sum of $425,000 and the HCC Avoidance Claims.

Upon the Effective Date or at such later date as the Reorganized MPC and the Class 6 Trustee may agree in writing, the Reorganized MPC shall also convey the Canal Street Property to the Class 6 Trust, free and clear of Liens, claims, and encumbrances (except for the attachments held by Messrs. Harrison and Eggert to the extent such attachments have not been previously avoided pursuant to the Harrison/Eggert Litigation).  In the event the attachments of Harrison and Eggert are avoided, the Reorganized Debtors shall pay the outstanding real estate taxes associated with the Canal Street Property, which total $6,879.46 as of October 24, 2003., and in which case any municipal liens upon the Canal Street Property shall be discharged.

25

0055

**I.    Waiver of Certain Class 6 Claims.**

Upon the Effective Date, Summit, the Debtors and PPC shall be deemed to have waived any Class 6 Claims which they may have against the Debtors, the Reorganized Debtors, the respective bankruptcy estates, and the Class 6 Trust (Summit's Class 6 Claim shall be satisfied through the issuance to Summit of New Common Stock in the Reorganized MPC).

**J.    Vesting Of Assets Of The Reorganized Debtor**

The property of the Estates of the Debtors, together with any property of the Debtors that is not property of the Estates and that is not specifically disposed of pursuant to the Joint Plan, shall vest in the Reorganized Debtors on the Confirmation Date. Thereafter, the Reorganized Debtors may operate its business and may use, acquire, and dispose of any and all such Assets free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Court. As of the Confirmation Date, all Assets of the Reorganized Debtors shall be free and clear of all Liens, Claims and Equity Interests, except as specifically provided in the Joint Plan or the Confirmation Order.

**K.    Preservation Of Rights Of Action**

Except as otherwise provided in this Joint Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Joint Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits or proceedings, whether in law or in equity, whether known or unknown, that the Debtors or the Estates may hold against any Person, including the Avoidance Actions (the "Retained Causes of Action). The Reorganized Debtors or their successor(s) may pursue such Retained Causes of Action.

**L.    Disposition of Defined Benefit Pension Plan.**

MPC, HCC, and PPC sponsor, respectively, the MPC Pension Plan, HCC Pension Plan, and PPC Pension Plan. The MPC Pension Plan, HCC Pension Plan, and PPC Pension Plan shall remain in force and shall be unaffected by Confirmation. The Reorganized Debtors and PPC, respectively, shall maintain the MPC, HCC, and PPC Pension Plans and continue to pay the minimum funding contributions required under ERISA and the Internal Revenue Code. Upon the Effective Date, the Debtors shall be deemed to have withdrawn, with prejudice, their Motion for Approval of Distress Termination of the PPC Pension Plan pending before the Bankruptcy Court. . The liability of the Reorganized Debtors to the pension plans or to the PBGC, under ERISA, shall not be affected by the Joint Plan, including by discharge or release.

0056

**M.    Extinguishment of Avoidance Actions Arising under 11 U.S.C. § 547**

Notwithstanding Article V, Section K herein, upon the Effective Date, all Avoidance Actions arising under 11 U.S.C. §547 shall be extinguished, except for those claims and rights arising in connection with the Harrison/Eggert Litigation and except to the extent necessary to defeat a Claim (or any Lien securing a Claim) asserted against the Debtors or their bankruptcy estates.

**N.    Effectuating Documents; Further Transactions**

The chairman of the board of directors, chief executive officer, president, chief financial officer or any other appropriate officer of the Debtors and the Reorganized Debtors, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Joint Plan. The secretary or assistant secretary of the Debtors or the Reorganized Debtors shall be authorized to certify or attest to any of the foregoing actions.

**O.    Applicability Of Sections 1125 And 1145 Of The Bankruptcy Code**

The protection afforded by Section 1125(e) of the Bankruptcy Code with regard to the solicitation of acceptances or rejections of the Joint Plan and with regard to the offer, issuance, sale or purchase of the New Common Stock, shall apply to the fullest extent provided by law, and the entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Debtors and their respective officers, directors, partners, employees, members, agents, attorneys, accountants, or other professionals, shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Section 1125(e) of the Bankruptcy Code. In addition, the exemption from the requirements of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and any state or local law requiring registration for the offer or sale of a security provided for in Section 1145 of the Bankruptcy Code, shall apply to the New Common Stock.

**P.    Exemption From Certain Transfer Taxes**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers either pre or post Confirmation from the Debtors, the Reorganized Debtors, or the Class 6 Trust to any Person or entity or to the Reorganized Debtors or Class 6 Trust, pursuant to the Joint Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental

27

assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Q.    Final Decree**

After the distribution of New Common Stock, the resolution of any objections to Claims in the Chapter 11 Cases, and the resolution of any Causes of Action in the Bankruptcy Court, the Reorganized Debtors shall file a report with the Bankruptcy Court and seek the entry of a Final Decree.

## ARTICLE VI

### ACCEPTANCE OR REJECTION OF THE JOINT PLAN

**A.    Classes Entitled To Vote**

Each Impaired Class of Claims that may receive or retain property or any interest in property under the Joint Plan [i.e., Classes 1, 2, 3, 4 (in certain instances), and 6] shall be entitled to vote to accept or reject the Joint Plan. By operation of law, each Unimpaired Class of Claims is deemed to have accepted the Joint Plan and, therefore, is not entitled to vote to accept or reject the Joint Plan. Holders of Class 7 Claims shall not receive or retain any Claims or property under the Joint Plan, are presumed to have rejected the Joint Plan and therefore shall not be entitled to vote. Holders of Equity Interests in Class 8 are not entitled to receive or retain any property under the Joint Plan, are presumed to have rejected the Joint Plan and, therefore, shall not be entitled to vote on the Joint Plan. Holders of Equity Interests in Classes 9 and 10 are presumed to have accepted the Joint Plan, as a co-proponent of the Joint Plan.

**B.    Acceptance By Impaired Classes**

An Impaired Class of Claims shall have accepted the Joint Plan if (i) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Joint Plan and (ii) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Joint Plan.

Summit has conditionally agreed to accept the treatment of its claims in Classes 1 and 6 contained herein, subject to finalization of due diligence, and to vote in favor of confirmation of the Joint Plan provided that:

(i)      the Joint Plan is confirmed on or before November 15, 2003;

(ii)     Available Cash, net of payments required to be made on or before the Effective Date under the Joint Plan, is equal to or greater than $750,000;

28

     (iii)    There is no material adverse change in the financial condition of the Debtors between August 4, 2003 and the Confirmation Date of the Joint Plan;

     (iv)    Documents required to effectuate the Joint Plan are negotiated to the reasonable satisfaction of Summit and the Debtors;

     (v)    Summit's Claim is Allowed in accordance with the terms of the Joint Plan; and

     (vi)    The Allowed Secured, Administrative, and Priority Claims are Allowed in the amounts substantially in accordance with the estimates provided in the Disclosure Statement.

## C.    Cramdown

To the extent necessary, the Debtors shall request Confirmation of the Joint Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to modify the Joint Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Method of Distributions to Holders of Claims

The Disbursing Agent will make all distributions required under the Joint Plan. Any Disbursing Agent will serve without bond, and any Disbursing Agent may employ or contract with other entities to assist in or make the distributions required by the Joint Plan. The Reorganized Debtors and the Class 6 Trustee shall be authorized to implement such procedures as they deem necessary to distribute funds to Classes 1 through 6, so as to efficiently and economically assure prompt and proportionate distribution of such consideration.

### B.    Compensation and Reimbursement for Services Related to Distributions

The costs and expenses of the Class 6 Trustee associated with disbursements to Allowed Class 6 Claim holders shall be paid from funds provided for Class 6 distributions under the Joint Plan.

0059

## C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

### 1.    Delivery of Distributions

#### a.    Generally

Except as provided herein, distributions to holders of Allowed Claims will be made by the Disbursing Agent (a) at the addresses set forth on the respective proofs of Claim filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to the Disbursing Agent (including pursuant to a letter of transmittal delivered to a Disbursing Agent) after the date of filing of any related proof of Claim; or (c) at the addresses reflected in the applicable Debtors' Schedules if no proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address.

### 2.    Undeliverable Distributions

#### a.    Holding of Undeliverable Distributions

If any distribution to a holder of an Allowed Claim is returned to a Disbursing Agent as undeliverable, no further distributions will be made to such holder unless and until the applicable Disbursing Agent is notified by written certification of such holder's then-current address.

#### b.    Failure to Claim Undeliverable Distributions

Any holder of an Allowed Claim that does not assert a Claim pursuant to the Joint Plan for an undeliverable distribution to be made by the Disbursing Agent within one year after the later of (i) the Effective Date and (ii) the last date on which a distribution was deliverable to such holder, will have its Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Reorganized Debtors, their respective Assets, or the Class 6 Trust. Nothing contained in the Joint Plan will require any Debtor, Reorganized Debtor, or any Disbursing Agent to attempt to locate any holder of an Allowed Claim.

## D.    Effective Date

1.    The Disbursing Agent will be entitled for all purposes herein to recognize and make distributions only to those holders of Claims who are holders of such Claims as of the close of business on the Effective Date.

2.    Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims in Class 6 that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Effective Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Effective Date.

0060

**E.      Means of Cash Payments**

Except as otherwise specified herein, cash payments made pursuant to the Joint Plan will be in currency of the United States by checks drawn on a domestic bank selected by the Disbursing Agent or, at the option of the Disbursing Agent, by wire transfer from a domestic bank.

**F.      Timing and Calculation of Amounts to Be Distributed**

**1.      Allowed Claims in Class 6**

On the Effective Date, distributions made to holders of Allowed Claims on account of such Claims will be calculated as if each Disputed Claim were an Allowed Claim in its face amount.   Funds shall be placed in the Distribution Reserve pending resolution of Disputed Claims.

**2.      De Minimis Distributions**

No distributions shall be made for less than $5.00 to any individual Claim holder.

**3.      Compliance with Tax Requirements**

a.      In connection with the Joint Plan, to the extent applicable, the Reorganized Debtors or any Disbursing Agent will comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Joint Plan will be subject to such withholding and reporting requirements.

b.      Notwithstanding any other provision of the Joint Plan, each entity receiving a distribution of Cash or New Common Stock pursuant to the Joint Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding and other tax obligations.

**G.      Setoffs**

Except with respect to Claims of a Debtor or the Reorganized Debtors released pursuant to the Joint Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Joint Plan, the Reorganized Debtors or, as instructed by the Reorganized Debtors a third party Disbursing Agent may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Joint Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights and causes of action of any

31

nature that the Reorganized Debtors may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Reorganized Debtors of any claims, rights and causes of action that any Debtor or the Reorganized Debtors may possess against such a Claim holder.

## ARTICLE VIII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Assumption And Rejection Of Executory Contracts And Leases**

    1.    <u>Agreements and Leases</u>.

Except as otherwise provided in the Joint Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Joint Plan, as of the Effective Date each Reorganized Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease: (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume filed on or before the Confirmation Date, (iv) is identified as an assumed executory contract or an assumed unexpired lease, as applicable, in a plan supplement pending before the Court; or (v) is assumed pursuant to another Section of this Article VIII.

    2.    <u>Effect of Confirmation Order on Assumptions and Rejections</u>.

The Confirmation Order shall constitute an order of the Court under Section 365 of the Bankruptcy Code approving the contract and lease assumptions and rejections described above, as of the Effective Date.

**B.    Payments Related To Assumption Of Executory Contracts And Leases**

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Joint Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor party to the executory contract or lease or the assignee of the Debtor party assuming such contract or lease, by Cure, or by such other treatment as to which each Debtor and such non-Debtor party to the executory contract or unexpired lease shall have agreed in writing. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of a Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur within 30

0062

days following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

**C.    Bar To Rejection Damages**

If the rejection by the Debtors, pursuant to the Joint Plan or otherwise, of an executory contract or unexpired lease results in a Rejection Claim that is not theretofore evidenced by a timely filed proof of Claim or a proof of Claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their respective properties, or the Class 6 Trustee, unless a proof of Claim is filed with the Clerk of the Court and served upon counsel for the Debtors within thirty (30) days of entry of the Confirmation Order.

**D.    Compensation And Benefit Joint Plans**

Except as and to the extent previously assumed or rejected by an order of the Court, subject to a motion to assume pending before the Court as on the Confirmation Date, or included in this Plan or a plan supplement as a contract to be assumed, all employee compensation and employee benefit plans of the Debtors, including programs subject to Sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are rejected and shall not survive confirmation of this Joint Plan.

**ARTICLE IX**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT AND UNLIQUIDATED CLAIMS**

**A.    Prosecution of Objections to Claims**

**1.    Objections to Claims**

All objections to Claims must be filed and served on the holders of such Claims by the Claims Objection Bar Date, and, if filed prior to the Effective Date, such objections will be served on the parties on the then-applicable service list in the Chapter 11 Cases, including the Committee. If an objection has not been filed to a proof of Claim or a scheduled Claim by the Claims Objection Bar Date, the Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

33

2.    **Authority to Prosecute Objections**

After the Confirmation Date, only the Reorganized Debtors (and the Class 6 Trustee as to Class 6 Claims) will have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims.

B.    **Treatment of Disputed Claims**

Notwithstanding any other provisions of the Joint Plan, no payments or distributions will be made on account of a Disputed Claim but only as to the disputed portion until such Claim becomes an Allowed Claim.

## ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE JOINT PLAN

A.    **Conditions To Confirmation**

The following are conditions precedent to confirmation of the Joint Plan that must be satisfied or waived in accordance with this Article:

1.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors.

The Debtor, and to the extent applicable the Reorganized Debtors, shall use best efforts to avoid the Liens asserted by Harrison and Eggert against the Canal Street Property and shall defend any appeal brought by (a) Harrison and Eggert with respect thereto and (b) brought by the ESOP Objecting Parties with respect to the classification and treatment of their Claims.   In the event appeals are filed both with respect to the Harrison/Eggert Litigation and the objections of the ESOP Objecting Parties to confirmation, all parties in interest shall use best efforts to have such appeals consolidated for administrative purposes, provided that no parties are deemed to waive their rights to pursue relief in a particular forum.   All costs associated with the foregoing litigation shall be borne by the Debtors and the Reorganized Debtors.

B.    **Conditions To Effectiveness**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article X(C) below:

1.    The Confirmation Order shall have become a Final Order or, if an appeal has been filed, no stay pending appeal remains in effect.

0064