2.    All authorizations, consents and regulatory approvals, if any, required in connection with the effectiveness of the Joint Plan shall have been obtained.

    3.    All other actions, documents and agreements necessary to implement the Joint Plan pursuant to Article V shall have been effected or executed.

**C.**    **Waiver Of Conditions**

The conditions set forth above may be waived in whole or in part by the Debtors or the Reorganized Debtor, as the case may be. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or the Reorganized Debtors). The failure of the Debtors or the Reorganized Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE XI

## MODIFICATIONS AND AMENDMENTS

The Debtors may alter, amend, or modify this Joint Plan, the plan supplement, if any, and exhibits hereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Joint Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Joint Plan, the Disclosure Statement or the Confirmation Order, and to accomplish such matters as may be necessary to carry out the purposes and effects of the Joint Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Equity Interests under the Joint Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Court.

## ARTICLE XII

## RETENTION OF JURISDICTION

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Joint Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

2. Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Joint Plan or under Sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; *provided, however,* that from and after the Confirmation Date, the payment of the fees and expenses of the retained Professionals of the Reorganized Debtors and the Committee shall be made in the ordinary course of business and shall not be subject to the approval of the Court;

3. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

4. Effectuate performance of and payments under the provisions of the Joint Plan;

5. Hear and determine any and all adversary proceedings including Avoidance Actions, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

6. Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Joint Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Joint Plan, the Disclosure Statement, or the Confirmation Order;

7. Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Joint Plan, including disputes arising under agreements, documents or instruments executed in connection with the Joint Plan;

8. Consider any modifications of the Joint Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

9. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation or enforcement of the Joint Plan or the Confirmation Order;

10. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated, or if distributions pursuant to the Joint Plan are enjoined or stayed;

11. Hear and determine any matters arising in connection with or relating to the Joint Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Joint Plan, the Disclosure Statement or the Confirmation Order;

12. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

13. Recover all Assets of the Debtors and Assets of the Estates, wherever located;

14. Hear and determine matters concerning federal, state and local taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

15. Hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

16. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

17. Enter a final decree closing the Chapter 11 Cases.

18. Adjudicate any disputes among the Reorganized Debtors, the Class 6 Trustee, and Harrison respecting the sale or other disposition of the Canal Street Property or the proceeds thereof.

19. Adjudicate any disputes among the Reorganized Debtors, the Class 6 Trustee, Harrison and Eggert, and the ESOP Objecting Parties to the extent that said dispute may be remanded to the Bankruptcy Court by any appellate court(s).

Any disputes respecting the employment contracts for key employees, the provisions of the EBC Plan, or the profit sharing plan shall not be subject to the jurisdiction of the Bankruptcy Court.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

A. **Bar Dates For Certain Claims**

1. <u>Professional Fee Claims</u>. All final requests for compensation or reimbursement of Professionals pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered to the Debtors or Committee prior to the Confirmation Date must be filed

and served on the Reorganized Debtors, their counsel and the Committee's counsel no later than 45 days after the Confirmation Date, unless otherwise ordered by the Court.

2. <u>Other Claims</u>. The Debtors have served notices of bar dates for the filing of prepetition claims and administrative claims other than those of professional persons retained during the Chapter 11 Cases.

**B.   Payment Of Statutory Fees**

On or before the Effective Date, the Debtors shall pay or have paid in Cash in full all allowed Administrative Claims for fees payable pursuant to 28 U.S.C. §1930 and fees payable to the Court, which are due and payable on or before the Effective Date. All fees payable pursuant to 28 U.S.C. §1930 after the Effective Date will be paid by the Reorganized Debtors.

**C.   Amendment And Severability Of Joint Plan Provisions**

If, prior to Confirmation, any term or provision of the Joint Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Joint Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Joint Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**D.   Successors And Assigns**

The rights, benefits and obligations of any Person named or referred to in the Joint Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**E.   Discharge Of The Debtors And Injunction**

All consideration distributed under the Joint Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims against the Debtors of any nature whatsoever, against any of the Assets, or against the Class 6 Trust. Except as otherwise expressly provided in the Joint Plan, entry of the Confirmation Order acts as a discharge of all Claims against and Liens upon the Debtors, the Assets, and the Class 6 Trust, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of Claim therefor was

0068

filed, whether the Claim is Allowed, or whether the holder thereof votes to accept the Joint Plan or is entitled to receive a distribution thereunder, subject to the occurrence of the Effective Date. Upon entry of the Confirmation Order, and subject to the occurrence of the Effective Date, any holder of such discharged Claim or Equity Interest shall be precluded from asserting against the Debtors, the Reorganized Debtors, any of their successors or any of their respective Assets or properties, or the Class 6 Trust, any other or further Claim or Equity Interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the date of entry of the Confirmation Order. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, subject to the occurrence of the Effective Date.

In accordance with Section 524 of the Bankruptcy Code, the discharge provided by this Section and Section 1141 of the Bankruptcy Code shall act as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset or recover the Claims discharged hereby. Except as otherwise expressly provided in the Joint Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtors will be permanently enjoined and precluded permanently, on and after the Effective Date, subject to the occurrence of the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtors, or the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or any of their respective successors on account of any such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtors, the Reorganized Debtors or against their respective Assets on account of any such Claim, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtors, the Reorganized Debtors or against their respective Assets on account of any such Claim. The foregoing injunction will extend to successors of the Debtors (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property, as well as the Class 6 Trust.

**F.  Releases**

The Reorganized Debtors and the Class 6 Trustee shall release those directors and officers in service as of the Confirmation Date from any and all claims and liabilities arising during the course of their service as director or officer, including those which may arise for breach of a fiduciary duty but specifically excluding those claims or liabilities which may arise in connection with the Joint Plan or ancillary documents thereto.

Upon the Effective Date, the Reorganized Debtors, the Class 6 Trustee [in his/her capacity as bankruptcy estate representative authorized to pursue the HCC Avoidance Claims], and Summit, each for themselves, their agents, employees, affiliates, predecessors (including Fleet in the case of Summit), successors and assigns shall be deemed to have fully released, remised, and forever discharged one another from any and all claims, acts, debts, demands,

39

actions, causes of action, suits, dues, sum and sums of money, accounts, reckonings, bonds, covenants, contracts, controversies, agreements, promises, representations, restitutions, doings, omissions, variances, damages and liabilities whatsoever of any name and nature, both in law and in equity, which the parties had or ever shall have from the beginning of the world to the Effective Date arising from, related to, or connected with the HCC Avoidance Claims. Notwithstanding the foregoing, nothing contained herein shall be deemed to have released, modified, or discharged any obligations that the Reorganized Debtors, Summit, or the Class 6 Trustee have under the Joint Plan.

### G.  Limited Indemnity

To the extent that the Class 6 Trustee obtains any recovery from the HCC Avoidance Claims, he or she shall hold Summit harmless from and against any indemnification or contribution claims brought against Summit for recovery of judgments against, or settlements paid by, any defendants to the HCC Avoidance Claims (but shall have no obligation to pay Summit's attorneys' fees in defense of such claims). In the event any such claims for indemnification or contribution is made or threatened against Summit, Summit shall: (x) promptly notify the Class 6 Trustee, and (y) use best efforts to defend such claims. The Class 6 Trustee shall not be liable for any settlement of any such claim by Summit without the Class 6 Trustee's consent which shall not be unreasonably withheld. Nothing in the foregoing shall confer the right upon any party to seek contribution or indemnity contrary to the provisions of M.G.L.A. 231B § 1 et. seq. or other applicable laws. Also, nothing contained in this section or otherwise in this Joint Plan shall be deemed an admission by Summit of any liability including, without limitation, in connection with the HCC Avoidance Claims.

### H.  Termination Of Committee

Except as otherwise provided in this Article, upon the Effective Date the Committee shall cease to exist, and its members and employees or agents (including, without limitation, attorneys, investment bankers, financial advisors, accountants and other professionals) will be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with their service on the Committee. The Committee will continue to exist after such date solely with respect to (i) applications filed pursuant to Section 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any professional, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the Joint Plan or the Confirmation Order, (iii) monitoring distributions, (iv) any matters pending as of the Effective Date in the Chapter 11 Cases, until such matters are finally resolved.

0070

I.  **Binding Effect**

The Joint Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims against and Equity Interests in the Debtors, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors, and all other parties in interest in these Chapter 11 Cases.

J.  **Revocation, Withdrawal Or Non-Occurrence Of Effective Date**

The Debtors reserve the right to revoke or withdraw the Joint Plan at any time prior to the Confirmation Date. If the Debtors revoke or withdraw the Joint Plan or if Confirmation or the Effective Date of the Joint Plan does not occur, then (i) the Joint Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Joint Plan (including the fixing or limiting to an amount certain for any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Joint Plan, and any document or agreement executed pursuant to the Joint Plan shall be deemed null and void, and (iii) nothing contained in the Joint Plan, and no acts taken in preparation for confirmation of the Joint Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

K.  **Joint Plan Supplement**

Any and all exhibits, lists or schedules not filed with the Joint Plan shall be contained in the plan supplement, and filed with the Clerk of the Court nine (9) days prior to the date set for the Confirmation Hearing. Upon its filing with the Court, the plan supplement may be inspected in the office of the Clerk of the Court during normal court hours or may be viewed on the Court's website at www.mab.uscourts.gov. Holders of Claims may obtain a copy of the plan supplement upon written request to the Debtors in accordance with Article XIII(L) hereof.

L.  **Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtors, the Reorganized Debtors, or the Class 6 Trustee hereunder shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, however, if said notice, request or

0071

demand is made by facsimile transmission then in that event the written notice, request or demand must also be served by first class mail, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> **MERRIMAC PAPER COMPANY, INC.**
> **HOLYOKE CARD COMPANY, INC.**
> **AQUAMAC CORPORATION**
> 9 South Canal Street
> Lawrence, MA
> Attn: Donald Plummer, President
> (978) 946-6500
>
> with a copy to:
>
> HANIFY & KING, P.C.
> One Beacon Street
> Boston, MA 02110
> Attn: Harold B. Murphy, Esq.
> Telephone: (617) 423-0400
> Facsimile: (617) 556-8985
>
> Counsel for the Debtors and
> Debtors in Possession
>
>
> Goulston & Storrs, P.C.
> 400 Atlantic Avenue
> Boston, MA 02110
> Attn: James F. Wallack, Esq.
> Telephone: (617) 482-1776
> Facsimile: (617) 574-4112
>
> Counsel for the Reorganized Debtors

0072

>Gadsby & Hannah, LLP
>225 Franklin Street
>Boston, MA 02110
>Attn. Charles A. Dale, Esquire
>Telephone: (617) 345-7000
>Facsimile: (617) 345-7050
>
>Counsel for Class 6 Trustee

**M.    Indemnification Obligations**

Except as otherwise specifically limited in this Joint Plan, any obligations or rights of the Debtors, or the Reorganized Debtors to defend, indemnify, reimburse or limit the liability of its present and former directors, officers, partners or employees pursuant to the Debtors, or the Reorganized Debtor's respective certificates of incorporation, by-laws or policies of providing employee indemnification, applicable state law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such directors, officers, or employees based upon any act or omission related to such present and former directors', officers', partners' or employees' service with, for, or on behalf of the Debtors prior to the Effective Date, shall survive confirmation of this Joint Plan and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

**N.    Prepayment**

Except as otherwise provided in this Joint Plan or the Confirmation Order, the Debtors shall have the right to prepay, without penalty, all or any portion of any Allowed Claim at any time; *provided, however,* that any such prepayment shall not be violative to or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

0073

### O. Term Of Injunctions Or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Joint Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### P. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of Massachusetts shall govern the construction and implementation of the Joint Plan and any agreements, documents, and instruments executed in connection with this Joint Plan and (ii) the laws of the State of Delaware shall govern corporate governance matters with respect to MPC, in either case without giving effect to the principles of conflicts of law thereof.

### Q. Post-Effective Date Directors and Officers Liability Coverage

The Reorganized Debtor shall use its best efforts to secure executive protection insurance coverage subsequent to the Effective Date upon such terms as are customary in the industry and reasonably acceptable to Summit

MERRIMAC PAPER COMPANY, INC.,
HOLYOKE CARD COMPANY, INC.,
AQUAMAC CORPORATION,

By: /s/ Donald Plummer
    Name:  Donald Plummer
    Title:  Chief Executive Officer

Dated: Boston, Massachusetts
November 7, 2003

390436

44

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>MERRIMAC PAPER COMPANY, INC.,<br>Et al.<br><br>Debtors | )<br>)<br>)<br>)  Chapter 11<br>)  Case No. 03-41477-JBR through<br>)  Case No. 03-41479-JBR<br>)<br>)  Jointly Administered |

## ORDER CONFIRMING SECOND AMENDED JOINT REORGANIZATION PLAN OF MERRIMAC PAPER COMPANY, INC., HOLYOKE CARD COMPANY, INC., AND AQUAMAC CORPORATION, AS MODIFIED

Background

A. On March 17, 2003 (the "Petition Date"), Merrimac Paper Company, Inc. ("MPC"), Holyoke Card Company, Inc. ("HCC") and Aquamac Corporation ("Aquamac" and, collectively, the "Debtors") each filed petitions commencing proceedings under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

B. On or about September 5, 2003, the Debtors filed their First Amended Joint Reorganization Plan of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation (as subsequently amended and modified, the "Plan") and their First Amended Disclosure Statement for the First Amended Joint Reorganization Plan of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac Corporation. (the "Disclosure Statement").[1]

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Plan. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, shall have the meaning ascribed to that term in the Bankruptcy Code or such rules.

0075

C.  On September 8, 2003, this Court entered an order (the "Solicitation Procedures Order") that, among other things: (i) approved the Disclosure Statement as containing adequate information within the meaning of 11 U.S.C. § 1125 and Federal Rules of Bankruptcy Procedure ("FRBP") 3017, (ii) fixed November 5, 2003 at 1:30 p.m. Eastern Time as the date and time for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"); (iii) established certain procedures for soliciting and tabulating votes with respect to the Plan.

D.  In accordance with the Solicitation Procedures Order and FRBP 3017(d), the Debtors timely mailed solicitation packages including the Disclosure Statement (with the Plan annexed), the Solicitation Procedures Order and, where appropriate, a ballot (the "Ballots").

E.  The Debtor has filed a Report of Plan Voting certifying the results of the Ballots cast.

F.  On or about October 24, 2003, the Debtor filed certain modifications (the "Modifications") to the Plan which were nonadverse to all parties not having agreed in writing to the Modifications.

G.  On November 3, 2003, counsel to the Debtors submitted a memorandum of law in support of confirmation of the Plan (the "Memorandum of Law").

H.  On November 5, 2003, the Bankruptcy Court commenced the Confirmation Hearing to consider confirmation of the Plan, as amended by the Modifications, the record of the Confirmation Hearing, and this Confirmation Order. On November 6, 2003, the Debtors filed their Second Amended Joint Reorganization Plan of Merrimac Paper Company, Inc., Holyoke Card Company, Inc., and Aquamac

2

Corporation, as Modified to address certain objections to the Plan and concerns raised by this Court. The Confirmation Hearing was continued on November 7, 2003.

I.  The Court has reviewed and considered the Plan, the Affidavit of Donald Plummer in Support of Confirmation of the Plan (the "Confirmation Affidavit"), the Memorandum of Law, the Report of Plan Voting, all objections to confirmation of the Plan, as well as the evidence proffered or adduced and the exhibits admitted into evidence at the Confirmation Hearing and the representations and the arguments of counsel made at the Confirmation Hearing.

NOW, THEREFORE, based upon: (i) the Court's review of the Confirmation Affidavit, and the Memorandum of Law; (ii) all of the evidence proffered or adduced at the Confirmation Hearing; and (iii) the entire record of the bankruptcy cases; and after due deliberation thereon and good cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT[2]

Findings of Fact and Conclusions of Law

1.  <u>Exclusive Jurisdiction: Venue: Core Proceeding (28 U.S.C. §§ 157 (b)(2) and 1334 (a))</u>. This Court has jurisdiction over the bankruptcy cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.  <u>Transmittal and Mailing of Materials; Notice</u>. All due, adequate, and sufficient notices of the Disclosure Statement, the Plan, and the Confirmation Hearing,

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> FRBP 7052.

3

along with all deadlines for voting on, or filing objections to, the Plan, have been given to all known holders of Claims and/or Equity Interests in accordance with the FRBP and the procedures set out in the Solicitation Procedures Order. The Disclosure Statement, Plan, Ballots, Solicitation Procedures Order and Confirmation Notice were transmitted and served in substantial compliance with the FRBP and the Solicitation Procedures Order, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing was given in substantial compliance with the FRBP and the Solicitation Procedures Order, and no other or further notice is or shall be required.

3.  <u>Solicitation</u>. The solicitation of votes for acceptance or rejection of the Plan complied with 11 U.S.C. §§ 1125 and 1126, FRBP 3017 and 3018, the Disclosure Statement, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations and the Solicitation Procedures Order. Based upon the record before the Court in these bankruptcy cases, the Debtors, their financial advisors, and attorneys acted in good faith in the solicitation of votes and are entitled to the protections afforded by 11 U.S.C. §1125(e).

4.  <u>Burden of Proof</u>. The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code as more fully set forth below by a preponderance of the evidence, which is the applicable evidentiary standard in this Court for Confirmation of the Plan.

5.  <u>Plan Complies with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(1).

4

i. **Proper Classification (11 U.S.C. § 1122, 1123 (a)(1))**. In addition to Allowed Administrative Claims and Priority Tax Claims, which are not classified under the Plan, the Plan designates 7 Classes of Claims and 3 Classes of Equity Interests. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such classifications do not unfairly discriminate between holders of Claims or Equity Interests. Thus, the Plan satisfies 11 U.S.C. §§ 1122, 1123(a)(1). Subordination of Stock Repurchase Claims to the Claims of Class 6 (Nonpriority Unsecured) creditors is warranted pursuant to the provisions of 11 U.S.C. §510, (a) provided, however, that the ESOP Objecting Parties shall be treated as Class 6 Claim holders in the event that a Final Order is entered sustaining objections to confirmation as such objections relate to the classification and treatment of Claims of the ESOP Objecting Parties and (b) provided, further, that Messrs. Harrison and Eggert shall be treated as Class 6 Claim holders in the event that a Final Order is entered in the Harrison/Eggert Litigation holding that the Claims of Harrison and Eggert may not be subordinated or otherwise avoided. In the event that a Final Order is entered subordinating a portion of the Claims held by the ESOP Objecting Parties, then such portion of such Claims which are not subordinated shall be treated as Class 6 Claims.

ii. **Specify Treatment of Unimpaired Classes (11 U.S.C. §§1123 (a)(2))**. The Plan specifies that Classes 4 (in some instances) and 5 are not impaired and, thus, 11 U.S.C. § 1123(a)(2) is satisfied.

iii. **Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))**. Classes 1, 2, 3, 4 (in some instances), 6, 7, 8, 9, and 10 are designated as impaired under the Plan. Article IV of the Plan specifies the treatment of impaired Claims and Equity Interests, thereby satisfying 11 U.S.C. § 1123(a)(3).

iv. **No Discrimination (11 U.S.C. § 1123(a)(4))**. The Plan provides for the same treatment by the Debtors for each Claim and Equity Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Equity Interest, thereby satisfying 11 U.S.C. § 1123(a)(4).

v. **Implementation Of Plan (11 U.S.C. § 1123(a)(5))**. The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying 11 U.S.C. § 1123(a)(5).

vi. **Required Corporate Charter Provisions (11 U.S.C. § 1123(a)(6))**. In accordance with section 1123(a)(6) of the Bankruptcy Code, Article V, Section B of the Plan provides that on and after the Effective Date, each of the Reorganized Debtors will modify their articles of incorporation and by-laws as necessary to comply with the Plan and this Order.

0079

  vii. <u>Selection Of Officers And Directors (11 U.S.C. § 1123(a)(7))</u>. At or prior to the Confirmation Hearing, the Debtors properly and adequately disclosed or otherwise identified the procedures for determining the identity and affiliations of all individuals or entities proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors, and the appointment of such individuals or entities is consistent with the interests of holders of Claims and Equity Interests and with public policy and, accordingly, satisfies the requirements of 11 U.S.C. § 1123(a)(7).

  viii. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. In accordance with section 1123(b) of the Bankruptcy Code, the Plan does not include any provision inconsistent with the applicable provisions of the Bankruptcy Code. The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code including, without limitation, provisions for (a) certain Classes of Claims to be unimpaired (b) distributions to Creditors, (c) the rejection or assumption of certain executory contracts and unexpired leases, and (d) the retention of, and right to enforce, sue on, settle or compromise (or to refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived or released under the Plan.

  ix. <u>Fed. R. Bankr. P. 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying FRBP 3016(a).

6. <u>Debtors Have Complied with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(2).

7. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying 11 U.S.C. § 1129(a)(3). The Debtors and each of their attorneys, agents, and financial advisors have acted in good faith, as applicable, in connection with the management and operation of the Debtors and the formulation, negotiation, proposal and implementation of the Plan and every contract, instrument, document or other agreement related thereto.

0080

8.  **Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4))**.

Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the bankruptcy cases, including all fees and expenses incurred by Professionals, or in connection with the Plan and incident to the bankruptcy cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying 11 U.S.C. § 1129(a)(4).

9.  **Directors, Officers, And Insiders (11 U.S.C. § 1129(a)(5))**. As set forth in the Disclosure Statement, the Plan, and the Supplement to the Plan filed on October 27, 2003 (the "Supplement"), the Debtors have disclosed the identity and other information with respect to the individuals proposed to serve, after confirmation of the Plan, as directors or officers of the Reorganized Debtors and have further disclosed the identity of any insiders who will be employed or retained by the Reorganized Debtors and the nature of such person's compensation. Such appointments or the continuance of the individuals in such positions are consistent with the interests of the holders of Claims and Equity Interests and with public policy. Therefore, the Debtors have complied with 11 U.S.C. § 1129(a)(5).

10. **No Rate Changes (11 U.S.C. § 1129(a)(6))**. Section 1129(a)(6) is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

11. **Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))**. Each holder of a Claim or Equity Interest in a Class which is impaired that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Equity Interest, property of

0081

a value, as of the Effective Date, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

12. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 7 (Stock Repurchase Claims) and Class 8 (MPC Equity Interests) are deemed to have rejected the Plan. All other Classes of Claims and Equity Interests have either voted to accept the Plan or are deemed to have accepted the Plan.[3]

13. <u>Treatment of Allowed Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9) because, except to the extent the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Expense Claims (11 U.S.C. §507(a)(1)), Other Priority Claims (11 U.S.C. § 507(a)(2)-(a)(7)), and Priority Tax Claims (11 U.S.C. § 507(a)(8)), shall be treated in accordance with the provisions of 11 U.S.C. § 1129(a)(9).

14. <u>Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Classes 1, 2, and 6 are impaired Classes of Claims that have voted to accept the Plan, and the acceptance of at least one of such accepting impaired Classes has been determined without including the votes of any insiders, thus satisfying 11 U.S.C. § 1129(a)(10).

15. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan is feasible and is not likely to be followed by a liquidation or the need for further financial reorganization. The Debtors have presented credible and persuasive evidence that they will be able to make

---

[3] Class 6 Claim holders initially voted to reject the Plan. After consideration of the Modifications which increased the distribution payable to Nonpriority Unsecured creditors, several Class 6 Claim holders elected to accept the Plan as modified. As a result, Class 6 has now met the acceptance criteria of 11 U.S.C. §1126.

0082

all payments required to be made under the Plan, and will otherwise be able to satisfy all of their obligations under the Plan.

16. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to Article III of the Plan, thereby satisfying 11 U.S.C. § 1129(a)(12).

17. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtors have agreed that payment of any retiree benefits shall be continued solely to the extent, if any, required by Section 1129(a)(13) of the Bankruptcy Code and for the duration of the period the Debtors are contractually or legally obligated to provide such benefits, subject to any and all rights of the Debtors or the Reorganized Debtors under applicable law. Accordingly, the Plan satisfies 11 U.S.C. § 1129(a)(13).

18. <u>Fair and Equitable: No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. The Plan does not discriminate unfairly against, and is fair and equitable to, Class 7 and Class 8. Separate classification of the Stock Repurchase Claims is appropriate because such claims are properly subordinated to the Claims of unsecured creditors pursuant to the provisions of 11 U.S.C. §510. The MPC Equity Interests are also properly classified separately from Claims against the Debtors.

19. The Plan is fair and equitable as to both Classes 7 and 8. The holders of Equity Interests junior to Class 7, including the Employee Stock Ownership Plan and Trust and its participants, shall not retain or receive any Claims or property under the Plan on account of such interests. Moreover, MPC has only one Class of stock; consequently, no Equity Interest junior to the Class 8 Equity Interests shall receive or retain any property under the Plan on account of such interest.

9

20. <u>No Other Plan (11 U.S.C. § 1129(c))</u>. No other plan of reorganization has been filed in connection with the bankruptcy cases.

21. <u>Principal Purpose of Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Therefore, the Plan satisfies the requirements of 11 U.S.C. § 1129(d).

22. <u>Modifications to Plan</u>. The Modifications do not materially and adversely affect or change the treatment of the holder of any Claim against the Debtors that has not accepted the Modifications in writing. In accordance with Bankruptcy Code § 1127 and FRBP 3019, these modifications and amendments do not require additional disclosure under section 1125 of the Bankruptcy Code, or the resolicitation of acceptances or rejections under section 1126 of the Bankruptcy Code and all holders of Claims who voted to accept the Plan are hereby deemed to have accepted the Plan as amended.

## DECREES

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

23. <u>Confirmation</u>. The Plan, as modified by the record of the Confirmation Hearing and this Confirmation Order, is hereby approved and confirmed with respect to each of the Debtors pursuant to 11 U.S.C. § 1129. If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. Unless otherwise provided herein, the terms of the Plan

0084